## SCHIPPER et al. v. MILTON et al.

(Supreme Court, Appellate Division. First Department. May 18, 1900.)

1. TRUSTEE OF AN EXPRESS TRUST—RIGHT TO SUE—BROKERS.

   Under Code Civ. Proc. § 449, providing that a trustee of an express trust may sue without joining the person for whose benefit the action is prosecuted, a broker may maintain suit on a sold note, though a copy attached to the petition showed that the same was for the benefit of another.

2. CONTRACT OF SALE—CUSTOM—CONSTRUCTION OF CONTRACT.

   A contract for the sale of hemp at the port of New York provided that it should be "current quality Manilla hemp. * * * No red hemp. * * * The hemp to be of above-described quality. * * * Any dispute on quality to be settled by arbitration in the usual manner." It was well known to all persons dealing in Manilla hemp that its quality could not be ascertained from the marks on the bales, and it was an established custom, in case the purchaser was dissatisfied with the quality, to submit to arbitration the price to be paid in lieu of the contract price. The vendee allowed arbitrators to fix the price, and then refused to take the hemp. Held, that the custom does not contradict the terms of the contract, and should be read into it, and the vendee, having submitted to the customary arbitration, was liable for the price as fixed by the arbitrators.

3. CUSTOM—REASONABLENESS—IMMEMORIAL USAGE—PRESUMPTIONS.

   Where a custom prevailed at the port of New York to submit the quality of Manilla hemp bought to arbitrators, in case of doubt as to quality, and that the price fixed therefor by the arbitrators in lieu of the contract price should be binding, the custom having prevailed for a long series of years, and regarded as indispensable, will be presumed reasonable.

4. CONTRACT OF SALE—WARRANTY—QUALITY—CUSTOM.

   A contract provided for the sale of "current quality Manilla hemp," and "current Leyte, guarantied equal good current quality Manilla hemp." It was well known in the trade that no reliance could be placed upon bales of Manilla hemp being of uniform quality, and a custom prevailed that the price should be fixed by arbitration, where the purchaser was dissatisfied with the quality. Held, that under the terms of the contract such custom would be applicable to the Leyte, in construing the warranty of the quality.

   McLaughlin, J., dissenting.

Appeal from judgment on report of referee.

Action by Charles W. G. E. Schipper and others against William F. Milton and others to recover for a breach of contract for the sale of

Manilla hemp.   From a judgment in favor of plaintiffs, defendants appeal.   Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Edmonds Putney, for appellants.

Austen G. Fox, for respondents.

RUMSEY, J.   The action was brought for the refusal of the defendants to accept a quantity of Manilla hemp which the plaintiffs had sold to them.   It was referred to a referee, who found for the plaintiffs, and directed a judgment for the damages which they had sustained because of the failure of the defendants to accept the hemp; and from the judgment entered upon that report this appeal is taken.

The first objection made by the appellants is that the plaintiffs had no standing in court to maintain this action.   The allegation of the complaint was that on the 29th of January, 1894, the plaintiffs entered into an agreement with the defendants whereby they agreed to sell, and the defendants agreed to buy, a certain quantity of hemp; that the terms of the contract would more fully appear from the sold note of a broker, "a copy of which is hereto annexed, and which is to be taken as a part of this complaint."   It appears by the sold note, which by this allegation is to be read as part of the complaint, that the contract was made by the plaintiffs as agents for Messrs. W. F. Stevenson & Co., Manilla, and that this firm was in fact the seller of this hemp to the defendants, and that the plaintiffs made, the contract for them. This brings the case precisely within section 449 of the Code of Civil Procedure, which provides that a trustee of an express trust may sue without joining with him the person for whose benefit the action is prosecuted, and defines a trustee of an express trust as a person with whom or in whose name a contract is made for the benefit of another. Within the plain reading of this section of the Code, the plaintiffs, having made this contract for the benefit of W. F. Stevenson & Co., were entitled to maintain this action.   Considerant v. Brisbane, 22 N. Y. 389; Rensselaer Co. v. Lundberg, 121 U. S. 451–454, 7 Sup. Ct. 958, 30 L. Ed. 982.

Those portions of the contract for the sale of the hemp which are material to the questions presented here are as follows:

"Sold for account of Mess. Smith & Schipper, agents for W. F. Stevenson & Co., Manilla, to Messrs. W. F. Milton & Co., about 4,000 bales current quality Manilla hemp, at five cents, U. S. gold, per lb.   About 1,000 bales current Leyte, guarantied equal good current quality Manilla hemp, at five and one-eighth cents, U. S. gold, per lb.   No red hemp.  *  *  *  The hemp to be of the above-described quality, sound, and in good order.  *  *  *  Any dispute on quality to be settled by arbitration in the usual manner."

The hemp arrived in due time at the port of New York, but when the vessel was discharged it was claimed by the defendants that the quality of the hemp was inferior to that agreed to be delivered, and they refused to accept it.   That refusal was by letter, in which they said that they declined to accept the hemp by reason of inferior quality, but, "as this is a matter to be settled by arbitration, we suggest that you store and insure the hemp, for ⁒ concerned, pending

result of arbitration." The arbitration was had, and it was found that a very considerable portion of the hemp was not of the quality specified in the contract, and the arbitrators, according to the usual custom, reduced the price of the inferior hemp. After that had been done it was again tendered to the defendants, at the price fixed by the arbitrators, but they again refused to accept it, and it was then sold; and this action is brought to recover the difference between the price brought at the sale and the amount which it is claimed was to be paid by the defendants for the hemp, together with storage and insurance.

The plaintiffs claim that it was well known to all persons dealing in Manilla hemp that the quality of the hemp cannot be ascertained from the marks on the bales, that every bale is sure to contain a considerable quantity of hemp of a quality different from that marked on the outside of the bale, and that it is impossible for any one selling a cargo of hemp to deliver the precise quality which is specified in the contract; and therefore they claim that there has arisen among dealers in hemp a well-established custom, by which the quality specified in the contract is regarded simply as a measure of the value of the hemp to be sold, and that, whenever a cargo arrives, if the parties to the contract cannot agree upon the valuation, it is the custom to refer it to arbitrators, who shall inspect the hemp, and fix the allowance to the purchaser to be made for the inferior hemp, and that upon such an arbitration the price to be paid is to be established, and the rights of the parties depend. The defendants claim that the evidence establishes no such custom, and that, if it did, the custom is unreasonable, unnecessary, and contradicts the contract, and that for these reasons the rights of the parties cannot be affected by it. The referee found that there was such a custom, and that, the defendants having resorted to arbitration pursuant to the terms of the contract, they were bound to accept the hemp at the price fixed by the arbitrators. Whether the referee was correct in this conclusion is the question to be determined upon this appeal.

It is a well-established rule of law that parties to a contract on a subject-matter concerning which known usages prevail are deemed to have incorporated such usages, by implication, into their agreement, if nothing is said to the contrary. Hostetter v. Park, 137 U. S. 31, 11 Sup. Ct. 1, 34 L. Ed. 568; Newhall v. Appleton, 114 N. Y. 140, 21 N. E. 105, 3 L. R. A. 859; Brown v. Byrne, 3 El. & Bl. 703; Walls v. Bailey, 49 N. Y. 464; Humfrey v. Dale, 7 El. & Bl. 266. The first question presented is whether the facts established the existence of such a general and well-known custom in this regard that the parties must be presumed to have contracted with reference to it. An examination of the contract will be of service in solving that question. The contract defines the quality of the hemp, and the number of bales of each quality, and it prescribes that the hemp is to be of the "above-described quality." So far it contains the usual and ordinary provision with regard to the quality of goods sold. It appears from the case, however, that the lowest quality of hemp in the market is red hemp, and the contract expressly provides that there shall be no red hemp. If the hemp was intended to be only of the prescribed quality, and hemp of any other quality was under no circumstances to be

received, it is quite difficult to see why there should be any provision in the contract that no red hemp would be allowed, because, if all the hemp was to be precisely of the quality prescribed, it would necessarily follow that red hemp was not to be received, and could not be tendered as a compliance with the contract; and, when the parties to the contract take pains to say that there should be no red hemp, it is almost necessarily to be inferred that they had in mind some custom by which the particular quality which was specified in the contract was not necessarily to be the quality which was to be delivered. In this connection it is to be said that this is a mercantile contract, and, in getting at the construction of it, it must be remembered that merchants are not in the habit of putting into their contracts stipulations to which they attach no importance or value. Bowes v. Shand, 2 App. Cas. 455–463; Browne v. Paterson, 36 App. Div. 167, 169, 55 N. Y. Supp. 404. The contract also provides that any dispute as to the quality of the hemp shall be settled by arbitration in the usual manner. The meaning of these words is not absolutely plain, and parol evidence may be fairly resorted to to explain them; and whatever the evidence establishes the fair intention of these words to be, may be used as controlling the construction of the contract, to enable us to get at the meaning of the provision.

Referring to the evidence, we find that all the witnesses sworn for the plaintiffs were men accustomed to deal in hemp, and they testify that there was just such a custom as was found by the referee; that this custom is well established, is well known, has existed for many years, and has been acted upon in contracts for the sale of hemp a very great many times. They testified further that every bale of Manilla hemp contains hemp of varying qualities; that, owing to the way it is prepared for the market by the Filipinos, it is practically impossible that any bale should contain the same quality throughout; that when it is put up it is marked as containing the quality of hemp that predominates in the bale, but that it is well known that such mark is not accurate; and, further, that it has been the custom to provide in the contract of sale for arbitration upon the arrival of the hemp in port, by which the actual quality of the hemp in the bale may be ascertained, if it is thought necessary to do so. They testified that the price named in the contract is intended to fix a standard for the price which is to be paid for the goods, and that, when the arbitrators find an inferior quality of hemp in the bale, they scale down the price so as to fix the value of the hemp in that bale, using the contract price as a basis for their valuation. On the part of the defendants, while Mr. Morgenroth, one of the junior partners of the defendants' firm, testified that he was not aware of any such custom, yet it is quite clear that the referee would have been justified in refusing to rely upon his testimony, because it is entirely negative. He testified that he did not profess to have any large experience in the business; and that is quite evident, because he could not remember that his firm had made any contracts between 1890 and 1893. He thought they made only one in 1894, and was unable to tell when they made any other. The senior partner, Milton, who had been in the business many

years, was not in the country, and was not sworn. One of the arbitrators, John Lund, who was sworn as a witness for the defendants, while he said that he did not know of any custom that made it obligatory on the parties to accept the price fixed by the arbitrators, did testify that it was "customary, if the buyer thinks the hemp is inferior to the quality called for by the contract, to ask for an arbitration to fix the quality and price he is to take it at"; that then arbitrators are named, to examine the hemp. And he says that, if they agree, the buyer takes the hemp at the price they fix, but, if they cannot agree, an umpire is named, and it is left to the umpire. "If the hemp is only slightly inferior, there is nothing more said about it, and the buyer takes it at the allowance fixed. If it is very inferior, then there is some more talk about it." It is quite clear from all the testimony of Mr. Lund that there is substantially such a custom as the plaintiffs claim, and that he himself was not only familiar with it, but that he recognizes it as a well-established custom,—so much so that he says:

"We cannot get along without the system of arbitration. The necessity of that has been recognized ever since I have been in the trade. As a matter of fact, the cargoes do not arrive here of a uniform kind,—uniform hemp."

. The other witnesses sworn by the defendants know the general practice, and say they do not recognize the existence of a custom; yet, upon a careful examination of their testimony, it is quite clear that the difference between them and the witnesses for the plaintiffs is merely verbal, and that each one, except Mr. Morgenroth, does substantially admit the existence of the custom as testified to by the plaintiffs' witnesses, and as found by the referee. But it is said that this custom is unreasonable, because it requires a party to accept goods of a different quality from that which he purchased. It must be remembered that all mercantile law is the result of well-established customs. As is said by Mr. Justice Swayne in the case of Merchants' Nat. Bank v. State Nat. Bank, 10 Wall. 604, 651, 19 L. Ed. 1008:

"The law merchant was not made. It grew. Time and experience, if slower, are wiser lawmakers than legislative bodies. Customs have sprung from the necessities and the convenience of business, and prevailed in duration and extent until they acquired the force of law. This mass of our jurisprudence has thus grown, and will continue to grow, by successive accretions."

The men who deal in articles of this nature, who are accustomed to large transactions, and seek to carry on business in such a way as to give them the least trouble and bring about the most satisfactory results, are certainly competent to fix the customs of their own trade; and when it is found, as the referee in this case found, that men of that character, doing business for a long series of years, have agreed that a certain manner of doing business best suits their convenience, it almost necessarily results that the custom thus established is reasonable, because it is a manner of dealing between reasonable men, which they have fixed upon as best adapted to promote their affairs. It is hard to suppose that men who are dealing at arm's length with each other, and who have the opportunity to know what is best for themselves, would agree to any custom in

their business which, on the whole, was not one which made it easier to transact it. The case might be very different if the custom was one established by an employer with his men, or a landlord with his tenants, for his own convenience, and where it is possible that he may require the employés or the tenants to do business in some way not to his advantage. In such a case the courts may well say that a custom was unreasonable. But where a custom has been established by the consensus of independent men, who are so situated that they can deal with each other as they see fit, the presumption should be, in every case, that the custom is a reasonable one, unless the contrary clearly appears. Baxter v. Rodman, 3 Pick. 435; McMasters v. Railroad Co., 69 Pa. St. 374. It is said in the case of Cox v. Insurance Co., 3 Rich. 331:

"Proof of a general custom furnishes a strong reason why we should regard it as reasonable. It must be sanctioned by general concurrence in its use for several years, before it can be said legally to exist. From proof of it as the general custom of the trade, we are bound, at least prima facie, to conclude that it is reasonable."

The case of Crocker v. Insurance Co., 8 Cush. 79, is to the same effect.

But it is said in addition that this custom tends to contradict the express terms of the contract. If there was in the contract anything more than an expression of the quality to be furnished, it might be said that that would be final and controlling, and that no other quality was to be delivered or accepted; but the provisions of the contract are that "no red hemp" should be allowed, with the further provision that, in case of dispute as to the quality, it should be settled by arbitration "in the usual manner." These provisions, coupled with the uncontradicted testimony as to what, in the trade, constitutes arbitration in the usual manner, indicate that the contract did not fix finally, and once for all, the precise quality of hemp which was to be delivered. Mercantile contracts are not always to be strictly construed. The intention of the parties is to be sought, and that intention would not unfrequently be defeated if the words were to be construed according to their usual import; and for that reason evidence is admitted to expound them, and to arrive at the true meaning of the contract. When a custom has been proved to exist, the mere fact that it apparently varies the contract is not sufficient to exclude proof of the custom, because it is impossible, without changing to some extent its apparent effect, to add a material incident by showing that the words are not employed in their usual meaning. Brown v. Byrne, 3 El. & Bl. 703, 715. So that unless, as the result of the parol evidence, the custom established is contradictory to the express terms of the contract, it must be received for the purpose of explaining it, to enable the court to decide as to the rights of the parties, as affected by the custom of which they were aware when the contract was made, and which entered into their agreement.

But it is said that, while this may be so with regard to the 4,000 bales of current Manilla hemp, it is not the case with regard to the 1,000 bales of current Leyte, as to which the contract guaranties the

quality to be equal to "good current quality Manilla hemp." Undoubtedly, if the word "guaranty," was to be understood as meaning that the warranty was that the hemp in the 1,000 bales should all be good current quality of Manilla hemp, there would be great force in this argument. But a fair construction of the word does not warrant any such conclusion. It was not a guaranty that the hemp should be all good current quality Manilla hemp, but it was a guaranty that the current Leyte should be equal to good current quality Manilla hemp; that is to say, that there should be found in the 1,000 bales of Leyte the same quality of hemp which would be found in 1,000 bales of Manilla. Giving this meaning to the provision (and we think it is the only reasonable one, the construction is that the current Leyte would be accepted subject to the same rules of arbitration as if it had been good current quality Manilla, and the contract was all to be construed in view of the custom which the evidence established was understood by every one, and which must be read into the contract.

For these reasons, we conclude that the decision of the referee was correct, and the judgment must be affirmed, with costs.

VAN BRUNT, P. J., concurs.

INGRAHAM, J. I concur with Mr. Justice RUMSEY in the affirmance of this judgment, but it hardly seems to me necessary, at this stage of the action, to seriously discuss whether the complaint correctly describes the relation of the plaintiffs to the cause of action sued on. In the contract the plaintiffs state that they are agents for Messrs. W. F. Stevenson & Co.; and while they do not, in form, make their contract as such agents, they describe themselves as occupying that position. Under this contract, the plaintiffs would have been personally liable to the defendants in case of a breach of the contract to deliver the hemp. Whether in fact they made the contract on their own behalf, or as agents of W. F. Stevenson & Co., the evidence is uncontradicted that before the commencement of the action the plaintiffs had paid W. F. Stevenson & Co. what was due them as the proceeds of the whole of this hemp. The whole beneficial interest in the contract, therefore, had, before the commencement of the action, vested in the plaintiffs; and they were the real parties in interest in the enforcement of the contract, and clearly, I think, the ones entitled to maintain the suit to recover for a breach thereof by the vendees. If in the complaint they incorrectly described the relation that they occupied in bringing the suit, where it clearly appears that they were the real parties in interest and entitled to recover, a case is presented where the complaint could be deemed to be amended to conform to the proof, so as to sustain the judgment. The case has been fairly tried upon the merits, and decided against the defendants, and there certainly is nothing in the record to justify a reversal of the judgment because the plaintiffs have failed to suggest in their complaint that they were suing as trustee of an express trust, rather than in their indi-

vidual capacity. As to the other questions discussed by Mr. Justice RUMSEY, I concur with him.

McLAUGHLIN, J. (dissenting). This action was brought to recover damages for the breach of a contract alleged to have been made between the plaintiffs and the defendants for the sale of Manilla hemp. The allegation of the complaint is:

"That on or about the 29th day of January, 1894, these plaintiffs entered into an agreement with said defendants, through William S. Daland, broker in merchandise, whereby these plaintiffs agreed to sell to the defendants, and the defendants agreed to purchase from the plaintiffs, about four thousand (4,000) bales current quality Manilla hemp, at five (5) cents, U. S. gold, per pound, and about one thousand (1,000) bales of current Leyte, guarantied equal to good current quality Manilla hemp, at five and one-eighth (5⅛) cents, U. S. gold, per pound, excluding red hemp, and that the terms of said agreement will more fully appear from the sold note of said broker, a copy of which is to be hereto annexed, and marked 'Exhibit A,' and which is to be taken as a part of this complaint."

That portion of Exhibit A which is material to the question under consideration reads as follows:

"Contract for Manilla Hemp.

"New York, January 29, 1894.

"Sold for account of Messrs. Smith & Schipper, agents for W. F. Stevenson & Co., Manilla, to Messrs. W. F. Milton & Co., about (4,000) four thousand bales current quality Manilla hemp, at (5) five cents, U. S. gold, per lb.; about (1,000) one thousand bales current Leyte, guarantied equal good current quality Manilla hemp, at (5⅛) five and one-eight cents, U. S. gold, per lb. No red hemp. * * *"

The defendants, by their answer, denied the above allegations of the complaint, and alleged as a defense, among others, that the contract referred to in the complaint was made with the firm of W. F. Stevenson & Co., of Manilla, and not with the plaintiffs, whose only connection therewith was as agents of Stevenson & Co. Upon the issue thus formed the parties went to trial, and it there appeared (in fact, it does not seem to have been seriously questioned) that the contract referred to was made between the defendants and W. F. Stevenson & Co., and that the plaintiffs' only connection with it was as agents of Stevenson & Co. The referee has so found, and there is an abundance of evidence to sustain his finding. But, notwithstanding the fact that the plaintiffs failed to prove that they had ever made a contract with the defendants for the sale and delivery of the hemp as alleged in the complaint, nevertheless a recovery was permitted, which a majority of this court is about to affirm, on the ground that the plaintiffs are entitled, under section 449 of the Code of Civil Procedure, to maintain the action as the trustees of an express trust. Whether the plaintiffs could originally have maintained an action in their own name, under this section of the Code, as the trustees of an express trust, it is not necessary to consider. That question is not now before us. They certainly could not do so under the allegations of the complaint, or under the proof offered upon the trial. To maintain an action under this section of the Code, as the trustees of an express trust, there

must be appropriate allegations in the complaint showing that, while the action is brought in the name of the plaintiffs personally, it nevertheless is prosecuted to and for the benefit of another. Otherwise, there is no meaning to the other portion of the section, which provides "that every action must be prosecuted in the name of the real party in interest." The complaint, as already indicated, alleged that the contract, for the breach of which a recovery was sought, was made by the plaintiffs personally; and, while the contract is referred to and made a part of the complaint, it will be found upon examination that that shows upon its face that it was made with the plaintiffs personally, and not as the representatives of Stevenson & Co. It is not even suggested in the complaint, either directly or inferentially, that the action is brought for the benefit of W. F. Stevenson & Co.; and, if there were appropriate allegations to that effect, the proof offered by the plaintiffs upon the trial establishes the contrary. The plaintiffs were allowed to prove, against the defendants' objection and exception, that, subsequent to the delivery of the hemp in New York, Stevenson & Co. were paid for it by the plaintiffs. One of the plaintiffs testified:

"Before this suit was brought, Stevenson & Co. had received all they were entitled to for the goods mentioned in this contract with Milton & Co., so that we did not bring this suit for their benefit. We arranged to become the owners of this hemp ourselves, some time within a month after the contract was made."

By the allegations of the complaint, therefore, as well as by the proof, Stevenson & Co. have no interest in the subject-matter of the action. The plaintiffs alone are personally interested in it. How, then, can a recovery be permitted to stand, on the ground that in bringing the action they were acting as the trustees of an express trust? It hardly seems necessary to answer the question. In bringing the action the plaintiffs were not, and from the very nature of things could not be,—no one else having an interest in the subject-matter of the contract,—the trustees of an express trust. The case relied upon in the prevailing opinion (Considerant v. Brisbane, 22 N. Y. 389) has nothing to do with the question. It is not in point, and, if it were, it would seem to be an authority against the position taken in the prevailing opinion. In that case the payment provided in the contract was, by express terms, made payable to the plaintiff as agent of the foreign corporation; and the allegations of the complaint in that action showed that the action was brought, not for the benefit of the plaintiff, but his principal. Here the court deliberately allows the plaintiffs, suing on one right, to recover upon an entirely different right, without allegations or competent proof of that other right.

But, even assuming that the action could be maintained by the plaintiffs as the trustees of an express trust, I am still of the opinion that the judgment should be reversed, for the reason that the proof failed to show that W. F. Stevenson & Co. performed the contract on their part to be performed. The contract, it will be noticed, among other things, provided that Stevenson & Co. were to deliver to the plaintiffs "1,000 bales current Leyte, guarantied equal good current quality Manilla hemp." It is said in the prevailing opinion that this portion of the contract was in effect a guaranty that the current

Leyte should be equal to good current quality Manilla hemp; "that there should·be found in the 1,000 bales of Leyte the same quality of hemp which would be found in the 1,000 bales of Manilla." I am inclined to the view that this construction is the proper one, and, if it be so, then it is difficult to see upon what principle of law a recovery could be had. The fact is uncontradicted that neither Stevenson & Co. nor the plaintiffs offered to perform their contract by delivering hemp of the quality guarantied. The contract called for "about 1,000 bales current Leyte, guarantied equal good current quality Manilla." Of the 1,000 bales offered, the arbitrators found, and the fact is uncontradicted, that only 25 bales corresponded to the guaranty, the other 975 being inferior in quality. It is undoubtedly a settled rule of law that a usage or custom in a trade, profession, or calling, when it is reasonable, uniform, well settled, not in opposition to fixed rules of law, not in contradiction of the express terms of a contract, is deemed to form a part of the contract, and to enter into the intention of the parties; but I am unable to see how this rule has any application to the 1,000 bales, which Stevenson & Co. had guarantied to be of a certain quality. Can it be that notwithstanding that guaranty a custom can be resorted to for the purpose of showing that the parties did not intend to convey a meaning which the word "guaranty" imports? If it can, then a custom can be resorted to for the purpose of varying, contradicting, and even destroying a contract which the parties themselves have made; and this, as I understand it, all of the cases hold cannot be done. For these reasons, I dissent from the conclusion reached by the other members of the court. I think this judgment should be reversed, and a new trial ordered, with costs to the appellants to abide the event.