(165 App. Div. 588)

### HART v. CORT. (No. 6469.)

(Supreme Court, Appellate Division, First Department. December 31, 1914.)

1. CUSTOMS AND USAGES (§ 17*)—ADMISSIBILITY.

Evidence of custom is incompetent to contradict those terms which attach to a contract by implication of law, as well as to contradict the express terms of a contract; the test of repugnancy being whether or not the custom, if written into the contract, would make it insensible or inconsistent.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. § 34; Dec. Dig. § 17.*]

2. CUSTOMS AND USAGES (§ 16*)—CONTRACTS—ADDITION OF IMPLIED TERM.

Where a contract by which plaintiff licensed defendant to perform a play in the United States and Canada did not provide that the license should be exclusive, parol evidence of a custom in the dramatic field that such licenses are in fact intended to be exclusive was incompetent to add such alleged exclusive feature to the contract.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. §§ 27, 28; Dec. Dig. § 16.*]

Clarke and Dowling, JJ., dissenting.

Appeal from Appellate Term, First Department.

Action by Thomas R. Hart against John Cort. From a determination of the Appellate Term, affirming a judgment of the City Court entered on a verdict directed for plaintiff, defendant appeals. Affirmed.

See, also, 83 Misc. Rep. 44, 144 N. Y. Supp. 627.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

House, Grossman & Vorhaus, of New York City (Louis J. Vorhaus, of New York City, of counsel, and Charles Goldzier, of New York City, on the brief), for appellant.

Appell & Taylor, of New York City (George H. Taylor, Jr., of New York City, of counsel), for respondent.

HOTCHKISS, J. The action is for royalties under a contract by which plaintiff licensed defendant to perform the play "La Tosca" within the United States and Canada. The license is not expressed to be exclusive, nor is there anything in it from which an exclusive license may be inferred. The defense was that, by custom, the license was in fact exclusive; but defendant's evidence to prove such custom was excluded, and the competence of such evidence is the sole question raised on this appeal.

The respondent claims that in a contract such as the present there is no presumption of exclusiveness (Warne v. Routleage, 18 Eq. Cas. 497; Willis v. Tibbals, 33 N. Y. Super. Ct. 220), and that custom may

not be proved to create doubt where otherwise none exists; and this principle was applied to the contract in question by the Appellate Term on a previous appeal to that court, where a judgment in plaintiff's favor was reversed and a new trial granted (83 Misc. Rep. 44, 144 N. Y. Supp. 627).

[1] Although the rules governing the proof of custom as bearing on the interpretation of contracts are in the main well settled, in their application the cases are in many respects conflicting, if not irreconcilable. That custom may not be shown to contradict the express terms of a contract is conceded. Is it competent to contradict those terms which attach to it by implication of law? I think, both on principle and authority, this question must be answered in the negative. It has been held that the test of repugnancy is whether or not the custom, if written into the contract, will make it insensible or *inconsistent*. Per Campbell, C. J., Humphrey v. Dale, 7 E. & B. 266, 275. In Hopper v. Sage, 112 N. Y. 530, 20 N. E. 350, 8 Am. St. Rep. 771, there was a contract for the sale in futuro of shares of corporate stock, on which a dividend had been declared prior to the date of the contract, but which dividend was not payable and was not paid until after such date. The contract provided that the defendant (purchaser) "is entitled to all dividends or extra dividends declared" between the date of the contract and the day when the stock was to be delivered, but was silent as to dividends declared before the contract was made. Defendant laid claim to the dividend in question, and in support of such claim offered evidence of a custom of the Stock Exchange; but the court held that the contract "was not made under such circumstances that those rules * * * could have any legal effect. * * * So far as the case shows, he [the vendor] was not a member" of the Exchange. Perhaps the decision of the case might well have been put solely on this ground, but it was not. After referring to the rule of law which gives to the owner of shares all dividends *declared* during the period of such ownership, the court, per Peckham, J., said:

"Usage and custom cannot be proved to contravene a rule of law, or to alter or contradict the express or *implied* terms of a contract, free from ambiguity, or to make the legal rights or liabilities of the parties to a contract other than they are by the terms thereof. When the terms of a contract are clear, unambiguous, and valid, they must prevail, and no evidence of custom or usage can be permitted to change them."

In the earlier case of Higgins v. Moore, 34 N. Y. 417, the same learned judge who wrote for the court in Hopper v. Sage, in an opinion reviewing many cases, clearly expressed and unmistakably applied the principle upheld in the latter case. That custom may not be invoked to alter or impeach the "implied terms of a contract, or to make the legal rights or liabilities * * * of the parties * * * other than they are by the common law," was expressly said by Earl, C., writing for the court, in Bradley v. Wheeler, 44 N. Y. 495, 504, which is among the cases cited and relied on in Hopper v. Sage. In Lawrence v. Maxwell, 53 N. Y. 19, 21, the court, per Allen, J., said:

"The counsel for the appellant does not controvert the elementary principle that custom or usage cannot avail to vary or alter the terms of an agreement as made, or its legal effect. Evidence may be given of a custom or usage

in explanation and application of particular words or phrases, and to aid in the interpretation of the contract, but not to derogate from the rights of the parties, or to import into the contract new terms and conditions, or vary the legal effect of the transaction."

The principles on which courts have been moved to receive evidence of custom are closely analogous to those on which the parol evidence rule is based. See Thomas v. Scutt, 127 N. Y. 133, 141, 27 N. E. 961. The limitations of this rule were explained in Trustees of Southampton v. Jessup, 173 N. Y. 84, 65 N. E. 949, and because in my judgment what was there said has an important bearing on the case in hand. The trustees had passed a resolution authorizing defendant "to make a roadway and to erect a bridge." On a previous appeal, the court had held (173 N. Y. 88, 65 N. E. 950) that the resolution "authorized two different structures, to wit, a solid roadway and a drawbridge, not a bridge on piles with a drawbridge in it." On the trial under review evidence had been received tending to show that both parties intended that the roadway should be of wood, which evidence was held to be incompetent. Referring to evidence admissible under the parol evidence rule, the court said (173 N. Y. 89, 90, 65 N. E. 951):

" 'It is received where doubt arises upon the face of the instrument as to its meaning, not to enable the court to hear what the parties said, but to enable it to understand what they wrote as they understood it at the time. Such evidence is explanatory and must be consistent with the terms of the contract.' * * * What ambiguous word or expression of doubtful meaning is there in the resolution relating to the *material* out of which the roadway was to be constructed? None whatever, for the writing is silent upon the subject. The defendant was given liberty to make a roadway, but nothing was said as to how it should be made or what it should be made out of. An ambiguity, in order to authorize parol evidence, must relate to a subject treated of in the paper and must arise out of words used in treating that subject. Such an ambiguity never arises out of what was not written at all, but only out of what was written so blindly and imperfectly that its meaning is doubtful. Nothing is said in the resolution before us upon the subject of the material to be used, or the method to be employed in making the roadway, and hence there is no ambiguity arising out of the words used with reference to that subject. Witnesses cannot be permitted to swear something into the instrument, which neither explains nor interprets any language used therein. They cannot swear a wooden roadway into a franchise which is silent, even to the exclusion of implication, as to the substance out of which the roadway is to be made. That would be making a new contract instead of explaining an old one, and would violate the principle upon which parol evidence is received to aid in interpreting an ambiguous word or expression. Since the plaintiffs gave the defendant the right to make a roadway, but did not restrict him to the use of wood, he was not obliged to use wood. As we held on the last appeal: 'In the absence of specifications in the grant, the defendant had the right to make a roadway out of the materials in common use for the construction of roads, such as earth and stone.' "

In the late case of Loomis v. N. Y. C. & H. R. R. Co., 203 N. Y. 359, 96 N. E. 748, Ann. Cas. 1913A, 928, the parol evidence rule was applied in an action at law to exclude evidence of instructions to ship by a particular route, where a bill of lading was silent as to the route, but was otherwise complete, the court saying (203 N. Y. 368, 96 N. E. 751, Ann. Cas. 1913A, 928):

"The effect of not specifying the route was simply to leave that subject open to the choice of the carrier, which could select any route that it chose."

In other words, the law itself controlled that feature of the contract.

[2] I do not think the case is one for the application of the "well-established rule that parties to a contract on a subject concerning which known usages prevail are deemed to have incorporated such usages by implication into their agreement, if nothing is said to the contrary." Per Rumsey, J., Schipper v. Milton, 51 App. Div. 522, 525, 64 N. Y. Supp. 935, affirmed 169 N. Y. 583, 62 N. E. 1100. I conceive that the above rule is subsidiary and subordinate to the controlling principle of necessity from which it springs, and that it can only be applied when there is need to interpret that which is ambiguous, or to supply that which is lacking. Where there is neither ambiguity nor failure to express completely the terms of a contract, and the rights of the parties are fixed by law, no custom may be shown. In Bradley v. Wheeler, 44 N. Y. 504, Judge Earl refers to the particular rule of custom which was the subject of the decision in Schipper v. Milton, and refuses to apply it for the reasons I have noted.

The determination of the Appellate Term should be affirmed, with costs.

INGRAHAM, P. J., and SCOTT, J., concur.

CLARKE, J. (dissenting). The action is brought to recover $1,-650 license fees claimed to be due under a contract under which the plaintiff gave to the defendant the right to represent the play "La Tosca" within the United States and the Dominion of Canada until the 1st day of July, 1912. Three hundred and fifty dollars were paid on the execution of the contract, and defendant agreed to pay $50 royalty for each and every performance and to represent said play for at least 40 performances, and, failing to represent the play for 40 performances, to pay $50 for each performance less than 40 that he should have failed to present the same. The contract contains this further clause:

"It is hereby understood and agreed by both parties hereto that the said play shall be produced with Mrs. Leslie Carter in the part in every performance."

The answer set up that at the time when the contract was made it was agreed and understood between the parties that the plaintiff had been granted the sole and exclusive right and license to publicly present the said play, and that prior to the making of the contract, and at the time thereof, there was, and now is, prevailing in the theatrical profession in the United States and Canada, a uniform, continuous, and well-settled custom and usage with respect to the granting of licenses to publicly perform plays, that where such license or right to perform a play is granted, and the parties to such license contemplate that such play is to be produced with a celebrated actor or actress as one of the cast, such license or privilege is deemed and construed to be exclusive within the territory and for the period for which it is granted, and that plaintiff breached the contract by granting the right to produce to others, who did produce the play during

the period and within the territory granted without the knowledge of the defendant. It also contains a counterclaim for the $350 down payment.

Upon the trial the defendant attempted to show by certain theatrical managers that there was such a usage and custom, well known to theatrical people in the United States and Canada at the time of the making of this contract, and under the circumstances disclosed, to wit, the agreement that there should be included in the cast a celebrated actor or actress, and that by such usage and custom the right to produce meant the exclusive right. All of this evidence was ruled out, and exception taken. The contract being in writing, and being produced and in evidence, and the amount being fixed and clear, the court directed a verdict for the plaintiff.

I am inclined to think that the evidence offered of custom and usage was competent; that it was not offered to contradict the contract, which did not provide that the rights should not be exclusive, but that it explains the phrase "the right to represent the play," and interprets what it meant among that class of business people who make and carry out such contracts. In Schipper v. Milton, 51 App. Div. 522, 64 N. Y. Supp. 935, affirmed 169 N. Y. 583, 62 N. E. 1100, the contract provided for the sale of about 4,000 bales current quality Manila hemp at 5 cents United States gold per pound, about one thousand bales current Leyte, guaranteed equal good current quality Manila hemp at 5⅛ cents United States gold per pound, "no red hemp; the hemp to be of above described quality, sound, and in good order; any dispute on quality to be settled by arbitration in usual manner." The defendants refused to accept, upon the ground that the quality of the hemp was inferior to that agreed to be delivered. Plaintiffs claimed that it was well known to all persons dealing in Manila hemp that the quality of the hemp cannot be ascertained from the marks on the bales; that every bale is sure to contain a considerable quantity of a quality different from that marked on the outside of the bale, and that it is impossible for any one selling a cargo of hemp to deliver the precise quality which is specified in the contract; and therefore they claim that there has arisen among dealers in hemp a well-established custom by which the quality specified in the contract is regarded simply as a measure of the value of the hemp to be sold, and that whenever a cargo arrives, if the parties to the contract cannot agree upon the valuation, it is the custom to refer it to arbitrators, who shall inspect the hemp, and fix the allowance to be made to the purchaser for the inferior hemp, and that upon such arbitration the price to be paid is to be established and the rights of the parties depend. The defendants claim that the evidence established no such custom, and that, if it did, the custom is unreasonable, unnecessary, and contradicts the contract, and that for these reasons the rights of the parties cannot be affected by it. Says Rumsey, J.:

"It is a well-established rule of law that parties to a contract on a subject-matter concerning which known usages prevail are deemed to have incorporated such usages by implication into their agreement, if nothing is said to the contrary. Hostetter v. Park, 137 U. S. 31 [11 Sup. Ct. 1, 34 L. Ed. 568]; Newhall v. Appleton, 114 N. Y. 140 [21 N. E. 105, 3 L. R. A. 859]; Brown v.

Byrne, 3 El. & Bl. 703; Walls v. Bailey, 49 N. Y. 464 [10 Am. Rep. 407]; Humfrey v. Dale, 7 El. & Bl. 266. * * * But it is said that this custom is unreasonable, because it requires a party to accept goods of a different quality from that which he purchased. * * * But it is said in addition that this custom tends to contradict the express terms of the contract. * * * Mercantile contracts are not always to be strictly construed. The intention of the parties is to be sought, and that intention would not infrequently be defeated if the words were to be construed according to their usual import, and for that reason evidence is admitted to expound them and to arrive at the true meaning of the contract. When a custom has has been proved to exist, the mere fact that it apparently varies the contract is not sufficient to exclude proof of the custom, because it is impossible, without changing to some extent its apparent effect, to add a material incident by showing that the words are not employed in their usual meaning. Brown v. Byrne, 3 El. & Bl. 703, 715. So that, unless as the result of the parol evidence the custom established is contradictory to the express terms of the contract, it must be received for the purpose of explaining it, to enable the court to decide as to the rights of the parties as affected by the custom, of which they were aware when the contract was made, and which entered into their agreement."

And Mr. Justice McLaughlin, although dissenting from the result, said:

"It is undoubtedly a settled rule of law that a usage or custom in a trade, profession, or calling, when it is reasonable, uniform, well settled, not in opposition to fixed rules of law, not in contradiction of the express terms of a contract, is deemed to form a part of the contract and to enter into the intention of the parties."

In Hostetter v. Park, 137 U. S. 30, 11 Sup. Ct. 1, 34 L. Ed. 568, Mr. Justice Blatchford said:

"It is well settled that parties who contract on a subject-matter concerning which known usages prevail incorporate such usages by implication into their agreements, if nothing is said to the contrary. Robinson v. United States, 13 Wall. 363, 366 [20 L. Ed. 653]."

In Newhall v. Appleton, 114 N. Y. 143, 21 N. E. 105, 3 L. R. A. 859, the complaint contained the averment of a contract by defendants to pay the plaintiff $15 an order for each and every order he obtained for said encyclopedia and $4 for each and every order he obtained for said other publications. The answer admitted the contract to pay the plaintiff those sums upon orders under which five volumes of the encyclopedia and ten parts of each of the other publications respectively had been taken and paid for by the subscriber, and not otherwise, and further alleged payment of the amount due under the contract. Upon the trial the plaintiff gave evidence that an oral contract, as averred in the complaint, had been made. The defendants offered to show that in the subscription book business the words used in the contract had a definite and well-established meaning, and that meaning was as set forth in the answer; that the words "$15 an order for each and every order obtained for the encyclopedia" meant, and were well understood in the subscription book business to mean, $15 an order for each and every order obtained for the encyclopedia under which five volumes have been taken and paid for by the subscriber, and not otherwise, while $4 an order for the other publications meant $4 for an order under which ten parts each, respectively, had been taken and paid for by the subscriber, and not otherwise. The court held that it was error to

refuse evidence in support of the defense as pleaded. Parker, J., writing for a unanimous court, said:

"Every legal contract is to be interpreted in accordance with the intention of the parties making it. And usage, when it is reasonable, uniform, well-settled, not in opposition to fixed rules of law, not in contradiction of the express terms of the contract, is deemed to form a part of the contract, and to enter into the intention of the parties, when it is so far established and so far known to the parties that it must be supposed that their contract was made in reference to it [citing authorities]. And evidence is always admissible to explain the meaning which usage has given to words or terms as used in any particular trade or business, as a means of enabling the court to declare what the language of the contract did actually express to the parties. * * * The principle stated in the authorities cited authorized the introduction of evidence, on the part of the defendants, tending to show that, by the usage or custom of the subscription book business, the words used in the contract had a well-defined meaning, which was understood by both parties to the contract, and what such meaning was. The evidence of custom was admissible, not to change or vary the contract made, but to ascertain with greater certainty what was the intention of the parties at the time of its making."

In Walls v. Bailey, 49 N. Y. 464, 10 Am. Rep. 407, the action was instituted to recover a balance alleged to be due for plastering the defendant's house. The contract provided a price per square yard. The plaintiffs claimed that in determining the number of square yards the openings, including the doors and windows, are to be measured as plastering, and that, in rooms plastered with two or three coat work, the part of the work behind the cornice and baseboard is to be measured as though actually plastered with two or three coats, though the same was only plastered with one coat. This claim was based on the assumption that at the time the agreement was made it was the custom of plasterers to so charge. Judge Folger said:

"Every legal contract is to be interpreted in accordance with the intention of the parties making it. And usage (with a limitation hereafter noticed), when it is reasonable, uniform, well settled, not in opposition to fixed rules of law, not in contradiction of the express terms of the contract, is deemed to form a part of the contract, and to enter into the intention of the parties. * * * Parties are held to contract in reference to the law of the state in which they reside. * * * And so they are presumed to contract in reference to the usage of the particular place or trade in or as to which they enter into agreement, * * * when it is so far established and so far known to the parties that it must be supposed that their contract was made in reference to it. * * * Evidence of usage is received, as is any other parol evidence, when a written contract is under consideration. It is to apply the written contract to the subject-matter, to explain expressions used in a particular sense, by particular persons, as to particular subjects, to give effect to language in a contract as it was understood by those who made use of it. Per Savage, C. J., Boorman & Johnston v. Jenkins, 12 Wend. 573 [27 Am. Dec. 158]. * * * There are many cases in which the language used would seem to indicate that, the existence of a usage of a trade, profession, or locality having been shown, the presumption indisputable arises that the parties did contract in reference to it."

After citing a number of cases upon the particular question as to whether the defendant was entitled to show his ignorance of the existence of the usage claimed, the opinion proceeds:

"It is for the jury, then, under proper instructions from the court, to take all the evidence in the case, that as to the existence, duration, and

other characteristics of the custom or usage, and that as to the knowledge thereof of the parties, and therefrom to determine whether there is shown a custom of such age and character as that the presumption of law will arise that the parties knew of and contracted in reference to it, or whether the usage is so local and particular as that knowledge in the party to be charged must be shown affirmatively or may be negatived."

In Underwood v. Greenwich Ins. Co., 161 N. Y. 413, at page 423, 55 N. E. 936, the rule governing the admission of evidence of usage to affect and interpret a contract as laid down in Newhall v. Appleton, 114 N. Y. 140, 21 N. E. 105, 3 L. R. A. 859, and Atkinson v. Truesdell, 127 N. Y. 230, 27 N. E. 844, was quoted with approval. The rule in Walls v. Bailey, supra, was quoted with approval in London Assurance Co. v. Thompson, 170 N. Y. 94, at page 99, 62 N. E. 1066.

In Miller v. Fischer, 142 App. Div. 172, 126 N. Y. Supp. 996, plaintiff brought an action upon a contract for the hiring of a canal boat for the transportation of ice. The defendant's contention at the trial was that there was a custom among boatmen and ice dealers, known to the plaintiff, to the effect that boats engaged in the transporting of ice should not be paid for unless ice should form of sufficient thickness to be marketable. The trial court ruled that the contract was specific and that proof of custom was immaterial. Mr. Justice Houghton, writing the unanimous opinion of the court, said:

"We are of opinion this was error. Assuming that the telegrams and writings which passed between the parties constituted a binding written contract, still the terms are not so specific that it can be said as matter of law that it was not made with reference to a well-known and uniform custom of the business. Parties are presumed to contract in reference to a uniform, continuous, and well-settled usage or custom pertaining to the matters as to which they enter into agreement, where such usage is not in opposition to well-settled principles of law, and is not unreasonable, and not in contradiction of the express terms of the contract, whether such contract be written or oral [citing cases]."

The foregoing are but a few of the cases establishing the proposition that evidence of usage, for the purpose of establishing the intent of parties to a contract who are engaged in any business, trade, or profession, is admissible when such evidence does not contravene positive provisions of law or contradict clear and express terms of the contract itself.

In the case at bar the parties were both in the theatrical business and made a contract in reference to theatrical matters. That business is as clearly a distinct business as any of those considered either in the cases cited or in others to be found in the books; and it may well have particular usages, which must be taken into consideration in ascertaining the intent of such contract, or which by such long and universal continuance arrive at the dignity of custom as binding as a rule of law. Whether the particular evidence sought to be introduced would have been sufficient to have supported the allegations of the answer and controlled the disposition of the case is not before us. The sole question is whether such evidence was competent. I have no doubt that it was, and therefore, in my opinion, the determination of the Appellate Term, and judgment and order of the City Court,

should be reversed, and a new trial granted, with costs in all courts to the appellant to abide the event.

DOWLING, J., concurs.