MARY C. HOPPER, as Executrix, etc., Respondent, *v.* RUSSELL SAGE, Appellant.

A dividend declared upon corporate stock belongs to the owner of the stock at the time, although the dividends are made payable at a future time.

In the absence, therefore, of any provision to the contrary in a contract of sale and purchase of stock, made outside of and not subject to the rules of the Stock Exchange, dividends previously declared, but made payable thereafter, belong to the seller and are not transferred by the contract.

Usage and custom may not be proved to contravene a rule of law or to alter or contradict the express or implied terms of a contract free from ambiguity, or to make the legal rights or liabilities of the parties other than they are by the terms thereof.

Where, therefore, a contract was made in the city of New York, outside of the Stock Exchange, between defendant and a broker, who, so far as appeared, was not a member of the said Exchange, acting on behalf of H., plaintiff's testator, for the purchase of certain stock by the former of the latter, to be delivered in thirty days, with a provision that defendant was to have all dividends declared during the thirty days, and a dividend on the stock had been declared prior to the contract but made payable thereafter, *held*, that defendant on tender of the stock after the close of the transfer books for dividends was not entitled to deduct the amount of the dividend from the purchase-price, although by the rules and usage of said Exchange he would have been entitled to the dividend.

(Argued January 23, 1889; decided March 5, 1889.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York in favor of plaintiff, entered upon an order made the first Monday of June, 1887, which overruled defendant's exceptions and directed judgment upon a verdict.

The action was brought to recover damages for alleged breach of contract.

On the 23d of May, 1878, the defendant for a valid consideration made an agreement with the plaintiff's decedent, of which the following is a copy:

"A. 3099                NEW YORK, *May* 23, 1878.

" For value received, the bearer may deliver me, on one day's notice, except last day, when notice is not required, five

hundred (500) shares of the common stock of the Chicago and Northwestern Railway Company at forty-nine (49) per cent, any time in thirty (30) days from date.

"The undersigned is entitled to all dividends or extra dividends declared during the time.

"Expires 1.3-4 o'clock P. M.

"RUSSELL SAGE."

On the 16th day of May, 1878, the board of directors of the above-named company, by resolution, declared a dividend on its capital stock of three per cent, both on the preferred and common stock, payable at the office of the company in New York on the 27th of June 1878, and the transfer books were to be closed for the purpose of the dividend on Tuesday, June 18th and re-opened on Saturday, June 29, 1878. It was admitted, as a fact, upon the trial, subject to objection as to the materiality thereof, that the following rule was in force during the year 1878, upon the Stock Exchange in New York, viz.: "On the day of the closing of the transfer books of any stock for a dividend, transactions in such stock for cash shall be ' dividend on' up to the time officially designated for the closing of the books ; all transactions other than for cash shall be ' dividend off ' after a quarter past two o'clock P. M., or after the closing of the books, should they close before that hour." It was also admitted, subject to the same objection, that in conformity to the above rule and the resolution above-named declaring a dividend, the stock of the Chicago & Northwestern Railway was on June 18, 1878, quoted and dealt in upon the Stock Exchange, "dividend off."

On the twenty-second day of June, before 1.30 P. M. of that day, the plaintiff's decedent tendered five hundred shares of the common stock of the above-mentioned railway to the defendant, at his office in the city of New York, and demanded payment therefor at the rate of $49 per share. The defendant refused to give that amount, but offered to receive and pay for the stock at the rate of $46 per share, which the plaintiff's decedent refused to take, and notified the defendant that he should hold him for the difference between forty-

nine and the market-price, which was then forty-six. The defendant based his refusal to pay more than forty-six upon his alleged right to receive the dividend of three per cent on the common stock of the railway, which had been declared on the sixteenth of May, and which was payable on the 27th of June, 1878. The agreement, or, as it is termed in this case, the "put," was purchased of the defendant at his private place of business in New York, by a broker on behalf of plaintiff's decedent, and such broker, so far as appears, was not a member of the Stock Exchange. There was no disputed question of fact in the case, and the trial judge ordered a verdict to be entered for the plaintiff for the difference between the price agreed to be paid ($49 per share) and the market-price of the stock on the day when the tender was made, June 22, 1878, which price was $46 per share, together with interest thereon from the day of such tender.

*Henry S. Bennett* for appellant. The refusal of the court to permit Mr. Osborn to state what directions Mr. Hopper gave him when he employed him to purchase the option, or whether he told him how much he should pay for it, and the price of the stock at which he should request Mr. Sage to pay for it was error. (*Dana* v. *Fiedler,* 12 N. Y. 46; *Blossom* v. *Griffin,* 13 id. 375; *Bissell* v. *Campbell,* 54 id. 358; *Henniman* v. *Rosenbeck,* 39 id. 100; *Tracey* v. *T. & B. R. R. Co.,* 38 id. 437; *Watts* v. *Bailey,* 49 id. 464.) The court erred in excluding evidence of the dividend resolution and the Stock Exchange rule as to when the stock must be regarded as "dividend off" and when "dividend on." (*M. P. Co.* v. *Moore,* 104 N. Y. 680.) When a dividend is declared it belongs to the owner of the stock at the time, and a sale of the stock transfers by operation of law all dividends which form a constituent and inseparable portion of the stock when the contract was made. (*Boardman* v. *L. S. & M. S. R. Co.,* 84 N. Y. 176.) The court erred in not permitting proof that the stock on the day of the contract could have been bought at a much less price than Sage agreed to pay for it,

provided that the theory of the respondent be correct. (*Booth* v. *C. M. Co.*, 74 N. Y. 21; *Dwight* v. *G. R. L. Ins. Co.*, 103 id. 341.)

*S. Jones* for respondent. A dividend, declared at the time of a sale of stock, or of a contract for its sale, although not payable until afterwards, does not pass to the purchaser. (*Spear* v. *Hart*, 3 Robt. 420; *Hill* v. *N. Co.*, 8 Hun, 459; 71 N. Y. 593; *Jermain* v. *L. S. & M. S. R. R. Co.*, 91 id. 483–492; *Hopper* v. *Sage*, 47 Supr Ct. 77; *Bright* v. *Lord*, 19 Am. Rep. 732; *Higgins* v. *Moore*, 34 N. Y. 422; *Lawrence* v. *Maxwell*, 53 id. 21; *S. Bk.* v. *N. Bk.*, 67 id. 463; *Bargett* v. *O. M. Ins. Co.*, 3 Bosw. 396; *Markham* v. *Jaudon*, 41 N. Y. 245; *Genet* v. *D. & H. C. Co.*, 56 N. Y. Supr. Ct. 30, 35.) The word " dividend " and the word " declared " used in connection with it have a settled legal meaning; no two meanings can be placed on the phrase, and its construction is not open to parol evidence. (*Henniman* v. *Rosenback*, 39 N. Y. 98.) To permit evidence to show a custom or usage among dealers in this class of contracts as to what dividends are meant by this clause, " the undersigned is entitled to all dividends or extra dividends declared during the time," would be to add to the contract, and cause something more to pass than passes by the terms of the contract and the law applicable thereto. (*Spear* v. *Hart*, 3 Robt. 420.) There was no error in the exclusion of the rules and regulations of the Stock Exchange. (*Hill* v. *Newschaurick*, 8 Hun, 459.)

PECKHAM, J. The only question in this case is as to whether the defendant was entitled to insist upon his claim to the dividend on the common stock of the railway which had been declared on the 16th of May and was payable on the 27th of June 1878. It has been held a number of times in this court that when a dividend is declared it belongs to the owner of the stock at that time, but that until such declaration the profits form part of the assets, and an assignment by a stockholder before such declaration carries with it his proportional share

of the assets, including all undeclared dividends. This is so in regard to dividends declared, but which are payable at a future time, and such dividends belong to the owner of the stock when declared. The declaration of the dividend is in legal contemplation a separation of the amount thereof from the assets of the corporation, which holds such amount thereafter as the trustee of the stockholder at the time of the declaration of the dividend. In the absence, therefore, of any provision in a contract of sale and purchase of stock, outside of and not subject to the rules of the Stock Exchange, the law declares that such a contract gives the dividends to the owner of the shares when the dividends were declared. This rule was announced in *Boardman* v. *Lake Shore & M. S. Railway Co.* (84 N. Y. 157), *Jermain* v. *Same Defendant* (91 id. 483, 492) and in *Matter of Kernochan* (104 id. 618).

On looking at the contract in question, it is seen that the parties did make some provision as to dividends, and it was agreed that the defendant was to be entitled to all dividends or extra dividends declared during the time of its running, that is, for thirty days from the date thereof, which was May 23, 1878. But that provision did not include the case of a dividend which had already been declared, and as to that dividend the contract was silent, and the law itself fixes the ownership thereof just the same as if it were thus provided in so many words in the contract. To overcome this result the counsel for the defendant endeavored in many and various ways to show that, by usage of the Stock Exchange, a person situated as was the defendant with reference to this stock and under precisely the same liability as the defendant, under the contract in question, was entitled to the dividend which had been declared, and which each party to this action now claims. All the various offers to prove facts, and all the various questions asked of different witnesses had this one result for their object, which was to change the law on the subject by reason of this custom or usage claimed to be prevalent on the New York Stock Exchange.

We think the learned trial judge correctly refused to per-

mit evidence of this nature to be given. Usage and custom cannot be proved to contravene a rule of law or to alter or contradict the express or implied terms of a contract free from ambiguity, or to make the legal rights or liabilities of the parties to a contract other than they are by the terms thereof. When the terms of a contract are clear, unambiguous and valid, they must prevail, and no evidence of custom or usage can be permitted to change them. (*Markham* v. *Jaudon,* 41 N. Y. 236; *Bradley* v. *Wheeler,* 44 id. 495; *Baker* v. *Drake,* 66 id. 518; *Colgate* v. *Penn. Co.,* 31 Hun, 297–299.)

In *Walls* v. *Bailey* (49 N. Y. 464), evidence was held proper of the existence of a custom among plasterers, in Buffalo, as to the particular manner of measuring the number of square yards plastered. It was admitted because, as the court said, the contract for the payment for the work done was not so plain in its terms as that there could be but one conclusion as to the mode of measurement by which the number of square yards could be arrived at. Usage, it was said, was to be considered as entering into and forming a part of a contract when the usage was reasonable, uniform, well settled; not in opposition to fixed rules of law, and not in contradiction of the terms of the contract.

The evidence offered in this case would have been inconsistent with the rules of law and would have contradicted the plain terms and legal effect of the contract. This is not a case where, by the terms of the contract made between members of the Stock Exchange, its rules and regulations are to control in its interpretation and obligations. Nor was it made under such circumstances that those rules and regulations could have any legal effect. The contract was made at the office of the defendant and by a broker for plaintiff's decedent, who as to this contract, at all events, was not acting as a member of the Stock Exchange, and, so far as the case shows, he was not a member thereof.

Upon the question of damages the proof was uncontradicted that at the time of the tender of the stock, when the defend-

ant should have paid the plaintiff's decedent $49 a share for the stock, in compliance with his agreement, the stock was selling at $46 per share, and that was its market-value.

There was no error committed on the trial, and the judgment entered upon the verdict for the plaintiff should be affirmed, with costs.

All concur.

Judgment affirmed.