(4 Misc. Rep. 12.)

### WARNER v. WATSON et al.

(Supreme Court, Special Term, Kings County. May 8, 1893.)

CORPORATE STOCK—TRANSFER—DIVIDENDS—CUSTOM OF STOCK EXCHANGE.

Plaintiff's assignor pledged stock for a loan with persons who, before the loan was due, fraudulently, and without notice to the assignor, sold the stock, "dividend on," on the floor of a stock exchange. At the time of the sale, dividends had been declared, but were not then payable. *Held,* that, though a custom of the exchange provided that dividends declared pass with the stock till the books of the company close, plaintiff's assignor not being a member of the exchange, such custom did not affect his right to the dividends, and they did not pass with the stock.

Action by Oscar Warner against the Delaware & Hudson Canal Company, impleaded with Watson & Gibson and Hess Bros. & Co., to recover dividends declared by defendant. Judgment for plaintiff.

The cause was submitted on the following agreed statement of facts:

(1) During the year 1890, and part of 1891, Robert E. Dietz was the owner of two hundred shares of the capital stock of the Delaware & Hudson Canal Company, which stock stood in his name upon the books of the company up to and until the 20th of December, 1891.

(2) On the 18th day of June, 1891, said R. E. Dietz, then owning and holding said two hundred shares of said stock, pledged the same, with other securities, with the firm of Field, Lindley, Wiechers & Co. as collateral security for a loan of money, which loan was payable six months after said date, and then indorsed a power of attorney in the following form upon the certificates for said stock, viz.:

"For value received —— hereby sell, assign, and transfer unto —— —— shares of the capital stock represented by the within certificate, and do hereby irrevocably constitute and appoint —— attorney to transfer the said stock on the books of the within-named company, with full power of substitution in the premises."

(3) On or about the —— day of November, 1891, and before either of the defendants had purchased said stock, Edward M. Field, a member of said firm of Field, Lindley, Wiechers & Co., without calling said loan, which was not due, and without any notice to or demand upon said Dietz, sold the two hundred shares of stock, through the firm of Howard Lapsley & Co.; and the same were purchased, one hundred shares thereof by the defendants Hess Bros. & Co., on the 18th day of November, 1891, and one hundred shares thereof by Watson & Gibson on the 24th day of November, 1891. Each of said purchases were for value, and without notice that the same had been wrongfully transferred by said Field, and were made regularly; that is, the same were deliverable the day following the sales, respectively.

(4) Neither said Robert E. Dietz nor said Edward M. Field was a member of the stock exchange. Lindley, a member of the firm of Field, Lindley, Wiechers & Co., was a member of the stock exchange, and the only member of the said firm who was a member of the stock exchange. Said Robert E. Dietz was a merchant, and did not operate in stocks, and had no notice or knowledge of the custom of the New York Stock Exchange with reference to the purchases and sales of stocks, nor had he any knowledge that his said stock, which he held as an investment, had been or was being sold.

(5) On the 18th day of November, 1891, one hundred shares of the said stock were sold on the floor of the stock exchange, by direction of Howard Lapsley & Co., (the said sale being made by Jones, French & Maury, who were members of the stock exchange,) to Hess Bros. & Co., who were members of the stock exchange; and the said one hundred shares were deliv-

ered to Hess Bros. & Co. on the morning of the 19th day of November, and paid for. The said stock was purchased by Jonas Hess for account of the defendants Henry Hess and Jonas Hess, composing the firm of Hess Bros. & Co.

(6) On the 24th day of November, 1891, one hundred shares of said stock were sold on the floor of the stock exchange, in pursuance of instructions from Howard Lapsley & Co., by F. Taylor & Co., members of the New York Stock Exchange, to Hatch & Foote, members of the New York Stock Exchange; and the said one hundred shares were delivered to Hatch & Foote on the morning of the 25th day of November, and paid for. The said stock was purchased by Hatch & Foote for account of the defendants Watson & Gibson.

(7) [This seventh clause of the submission, as well as the statement aforesaid, that divers persons were members of the stock exchange, is subject to the objection, made by the plaintiff's attorney, that the facts therein stated are incompetent, irrelevant, and immaterial, with leave reserved to the plaintiff's attorney to move to strike out this seventh clause, or any part thereof, if the court should so rule as to the whole or any part of the said seventh clause. Should this seventh clause be stricken out, it will be under objection duly made, and exception duly taken, by defendants.] Sales of stock on the New York Stock Exchange made after the declaration of a dividend, and before the closing of the books, are made under the custom of the exchange that dividends declared are included with the stock sold until the books of the company declaring the dividend have been closed. Sales on the floor of the stock exchange after the books have been closed are made, under the custom of the exchange, with such dividends excluded. Stock sold after the declaration of a dividend, and before the closing of the books, are said to be "dividend on." Stock sold while the books are closed, and before they are reopened are said to be "ex dividend." This was the understanding of the brokers engaged in the above sales.

(8) The market price of the first sales of the stock of the Delaware & Hudson Canal Company on November 26th, made on the floor of the exchange, ex dividend, were one and three-fourths per cent. lower than the last sales, made dividend on.

(9) The following is a correct transcript of corporate action taken by the Delaware & Hudson Canal Company at the time stated therein:

"Delaware & Hudson Canal Co.

"I hereby certify that the following is a true extract from the minutes of a meeting of the board of managers of the Delaware & Hudson Canal Company, held January 7th, 1891:

"'Resolved, that a dividend for the year 1891 be, and the same hereby is, declared out of the net earnings of the year next preceding upon the capital stock of this company, at the rate of seven (7) per cent. upon the par value thereof, and amounting in the aggregate to $2,100,000, and that such dividend shall be payable as follows, namely: One and three-quarters (1¾) per cent. upon the capital stock shall be payable upon March 16th, 1891, to stockholders of record upon February 25th, 1891; one and three-quarters (1¾) per cent. upon the capital stock shall be payable upon June 15th, 1891, to the stockholders of record upon May 27th, 1891; one and three-quarters (1¾) per cent. upon the capital stock shall be payable upon September 15th, 1891, to the stockholders of record upon August 26th, 1891; one and three-quarters (1¾) per cent. upon the capital stock shall be payable upon December 15th, 1891, to stockholders of record upon November 25th, 1891.'

"And I further certify that the following is a true extract from the minutes of November 25th, 1891:

"'Resolved, that the quarterly dividend of one and three-quarters (1¾) per cent. on the capital stock of this company, heretofore declared, be paid at the office of the company, in this city, on and after Tuesday, December 15th, 1891, and that the transfer books be closed from the close of business to-day until the morning of Wednesday, December 16th.'

"Witness my hand, and the seal of the company, the day and year first above written.

"[Seal.]                                    F. M. Olyphant, Secretary."

(10) The said sum of $2,100,000 was actually charged on the books of the company against its surplus above its capital; but no further separation of any fund or property of the company was made, nor was any portion of the said sum of money credited to any of the said stockholders, or held, in any form, for actual payment to them, as such stockholders, until the 25th day of November, save by said resolution of January 7, 1891.

(11) The cliam of the said Dietz has been duly assigned to the plaintiff.

Frederic A. Ward, for plaintiff.

E. Ellery Anderson and Hoadly, Lauterbach & Johnson, for defendants.

The dividends passed on sale of the stock. Hopper v. Sage, 112 N. Y. 530, 534, 20 N. E. Rep. 350; Jermain v. Railroad Co., 91 N. Y. 492; Brundage v. Brundage, 60 N. Y. 544, 551; Van Dyck v. McQuade, 86 N. Y. 52; Hill v. Newichawanick Co., 8 Hun, 459, 463, 71 N. Y. 593; Cook, Stock & S. 543, 545; Baker v. Drake, 66 N. Y. 518; Walls v. Bailey, 49 N. Y. 464, 473.

CULLEN, J. The dividends for which this action is brought were declared by the Delaware & Hudson Canal Company out of the profits of the year 1891, payable quarterly during the year 1892 to stockholders of record at various prescribed times during that year. By the declaration of these dividends the dividends became separated from the stock, except as qualified by the provision that the same were payable to the stockholders of record at subsequent periods, (Hopper v. Sage, 112 N. Y. 530, 20 N. E. Rep. 350,) and after the declaration of the dividend a transfer of the stock does not transfer the dividend, (Hill v. Newichawanick Co., 8 Hun, 459.)

This case is sought to be taken out of the general rule on two grounds: First, that the purchase was made at the stock exchange, where, by custom, dividends declared pass with the stock till the books of the company close; second, the qualification that the dividend should be payable only to stockholders of record at the future periods.

I cannot see that the custom of the stock exchange can affect the question between these parties. The plaintiff's assignor was not a member of the exchange, nor an operator or speculator in stocks, nor did the loan relate to any stock transaction. It was an ordinary loan, and, had the pledgee been honest, the stock would never have appeared on the exchange. The act of the pledgee was a larceny, under the Penal Code. Where property is lost by a felony, I cannot see how, in this state, the loss of the owner can differ, depending on the market where the purloined property is disposed of. What distinguishes this case from the many cases cited is that the transaction by which it was placed in the pledgee's power to deprive the pledgor of this stock never contemplated any connection with dealings on the exchange. The rights of the plaintiff must be the same as if the original loan and subsequent sale had been had with the merchants. The remarks in Hill v. Newichawanick Co., supra, as to the effect of such a sale

made by brokers at the exchange, have no application to the case at bar. There the Park Bank had an order for the dividend from the pledgor, and hence the same power to dispose of it as of the stock, and the only question was whether the bank had actually sold it by the sale of the stock. The question was just the same as if the sale had been made by the owner. Here the question is, what shall the owner lose by the tortious act of another? The law determines that, and the stock exchange cannot, by rules or custom, increase it, except as to its members, or as to transactions which presumably were intended to be made in the ordinary course of business there had.

As to the second ground, the defendants never transferred the stock so as to entitle themselves to the dividends. They have no greater equities than the plaintiff. Had the plaintiff sold them the stock, it might be well argued that, as he had put it in their power to transfer the stock, he contemplated that they should do so, and was estopped from claiming the dividends. But here the question is which of innocent parties shall suffer for the wrong of another. The equities being at least as great for the plaintiff as for them, the defendants must show that they have strictly entitled themselves to the moneys they seek to obtain.

Judgment for plaintiff, with costs.