Franklin J. Matchette, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 40710. Promulgated February 14, 1935.

*Hugh C. Bickford, Esq.*, and *William P. McCool, Esq.*, for the petitioner.

*W. Frank Gibbs, Esq.*, for the respondent.

OPINION.

VAN FOSSAN : This proceeding was heard upon stipulated facts and an opinion was promulgated on August 29, 1932 (26 B. T. A. 909). On application of the petitioner, concurred in by the respondent, rehearing was had, at which the parties filed a new stipulation of facts, modifying materially and enlarging the stipulation theretofore filed. The issues remain the same, namely, (1) whether or not under the following facts the petitioner was taxable on certain dividends, and (2) whether the dividend payable December 31, 1924, but received by the petitioner on or after January 2, 1925, was taxable in former or latter year.

The facts are now stipulated substantially as follows:

In December 1912 the petitioner acquired 700 shares of preferred and 1,740 shares of common stock of Richmond Radiator Co. at a cost of $88.50 per share for the preferred and $20 per share for the common. The fair market price or value of such stock on March 1, 1913, was the same as petitioner's cost. Petitioner sold said stock as follows:

| Year sold | Number of shares preferred | Number of shares common | Selling price |
|---|---|---|---|
| 1922 | | 1,000 | $6,000.00 |
| 1922 | 500 | | 40,000.00 |
| 1923 | | 500 | 3,500.00 |
| 1924 | | 200 | 3,000.00 |
| 1925 | 200 | | 23,386.00 |
| 1925 | | 40 | 756.40 |

In reporting gain or loss on account of these sales the petitioner used as his cost basis in every case $100 per share.

The petitioner, who was and is a citizen and resident of New York, New York, at all times material to this proceeding, kept his accounts for the years 1922, 1923, 1924, and 1925 and filed his Federal income tax returns for said years upon a cash receipts and disbursements basis as distinguished from an accrual basis.

From prior to January 23, 1923, and until February 3, 1923, the petitioner was the owner and holder of 7,555 shares of common stock

of the Servidor Co. and 5,651 shares of common stock of the New York Hotel Statler Co. (hereinafter called the Hotel Co.), a corporation duly organized and existing under the laws of the State of New York.

On January 23, 1923, the Hotel Co. declared a dividend out of its surplus or net profits of $35 per share on its common stock, payable February 10, 1923, to stockholders of record on January 26, 1923.

On February 3, 1923, the petitioner made a written offer to Matchette Investment Co. (hereinafter called the Investment Co.), a corporation then duly organized and existing under the laws of the State of Delaware, a true copy of which is as follows:

FEBRUARY 3, 1923.

MATCHETTE INVESTMENT COMPANY.
*Wilmington, Delaware.*

GENTLEMEN: I, the undersigned, hereby subscribe for and agree to take eleven thousand one hundred and ninety-five (11,195) shares of the capital stock of Matchette Investment Company, a corporation organized and existing under the laws of the State of Delaware, said stock being without nominal or par value, and I hereby agree to pay therefor and for the ten (10) shares of stock subscribed for by the Incorporators of this Company, by selling, assigning, transferring and setting over unto Matchette Investment Company the following shares of stock as follows, to wit:

7,555 shares of common stock without nominal or par value of The Servidor Company,

3,650 shares of common stock without nominal or par value of New York Hotel Statler Company, Inc., together with any dividends which may be paid hereafter upon said stock prior to the certificates therefor being transferred upon the books of said Company,

provided that the transfer of said shares of stock to the Company be accepted in full payment of eleven thousand two hundred and five (11,205) shares of its capital stock.

I further request that all the shares of stock of said Company be issued in my name except one (1) share which I direct to be issued in the name of Nellie S. Matchette and one (1) share to be issued in the name of Percival S. Kaufman.

FRANKLIN J. MATCHETTE.

The offer was duly accepted by the Investment Co. on the same date. The shares of stock of the Hotel Co. referred to in the agreement represent 3,650 shares of the 5,651 shares of the stock referred to above.

Pursuant to the agreement the 3,650 shares of common stock of the Hotel Co. and 7,555 shares of common stock of the Servidor Co. were thereupon assigned and delivered to the Investment Co. under the terms of the agreement and 11,205 shares of stock of the Investment Co. were issued to petitioner, Nellie S. Matchette, and Percival S. Kaufman. The shares of stock issued to Nellie S. Matchette and

Percival S. Kaufman were held by them as nominees for the petitioner. The 11,205 shares of stock of the Investment Co. constituted the entire issue of stock of the company. The Investment Co. thereupon caused the shares of stock of the Hotel Co. to be delivered to the transfer agent hereinafter referred to, which, after the opening of the stock records of said company as hereinafter stated, transferred such shares on the records to the Investment Co. on February 13, 1923.

The bylaws of the Hotel Co., at all times during the year 1923, contained the following provisions:

Article I, par. 4. At each meeting of the stockholders, every stockholder having voting rights * * * shall have one vote for each share of stock standing registered in his name on the books of the corporation for ten days next preceding the date of such meeting. * * * Only the persons having voting rights and in whose names shares of stock stand on the books of the corporation for ten days preceding the date of such meeting * * * shall be entitled to vote. * * *

Article IV, par. 2. No transfer of stock shall be valid as against the corporation except on surrender and cancellation of the certificate therefor, accompanied by an assignment or transfer by the owner thereof. * * *

Article IV, par. 3. The Board of Directors shall have power and authority to make all such rules and regulations, not inconsistent herewith, as it may deem expedient, concerning the issue, transfer and registration of certificates for shares of the capital stock of the corporation.

Article IV, par. 4. The Board of Directors may appoint a transfer agent or agents and a registrar or registrars of transfers within the State of New York, and may require all stock certificates to bear the signature of a transfer agent and of a registrar of transfers.

Article IV, par. 5. The stock transfer books may be closed for the meeting of stockholders, and may be closed for the payment of dividends, during such periods, as, from time to time, may be fixed by the Board of Directors, and during such periods no stock shall be transferable.

At all times during 1923 the Marine Trust Co. of Buffalo was the duly authorized and designated transfer agent for the capital stock of the Hotel Co., duly designated as such by the board of directors of said company pursuant to the authority granted by the bylaws.

Pursuant to authority of the bylaws, the board of directors of the Hotel Co. duly directed that the transfer books be closed from January 26, 1923, to and including February 10, 1923, and during such interval no stock could be transferred of record.

On February 10, 1923, the Hotel Co. mailed to the petitioner, as record holder, a check representing the dividend on the entire 5,651 shares of stock hereinabove referred to, at the rate of $35 a share, or a total of $197,785, in accordance with the custom of the company to make dividend payment by check. The check was accompanied by a printed notice in the form following, which check and notice were

received by petitioner in the usual course of the mail not later than February 12, 1923:

New York Hotel Statler Company, Inc.

Operating Hotel Pennsylvania, New York City

---

Executive Offices, Buffalo, N. Y.

The Board of directors has declared an extra dividend of $35.00 per share on the Common Stock payable February 10, 1923.

A check is enclosed in payment of this extra dividend on shares of common stock held by you.

Please advise us promptly of any change in your post-office address.

F. A. McKowne,<br>
<em>Treasurer.</em>

FEBRUARY 10, 1923.

Because the said check included dividends on 2,001 shares other than the 3,650 shares referred to in the foregoing subscription agreement, the petitioner, on February 16, 1923, deposited the same to his order in the Irving-Bank-Columbia Trust Co., New York City, and on February 20, 1923, drew his certified check to the order of Matchette Investment Co. for $127,750, representing the amount of the dividend on the 3,650 shares assigned to the company pursuant to the aforesaid subscription agreement of February 3, 1923. The check was thereupon delivered to the Investment Co. and was deposited by it in its bank account.

The following are the entries on the petitioner's cash book reflecting these transactions:

```
1923
Feb.
16   Irving Bank              Deposit
          To N. Y. Hotel St___. Div. on 2,001 shares_____  $70, 035. 00
              Match. Inv. Co___ Div. on 3,650 shares_____  127, 750. 00
20   Match. Inv. Co_____ Due Investment Co. for dividend on
                                 3,650 shares of N. Y. Hotel Statler
                                 Co. com. stock_____  127, 750. 00
```

The Investment Co. included the dividend of $127,750 in its Federal income tax return for 1923.

In his notice of deficiency the respondent added such amount, $127,750, to the gross income of the petitioner for the year 1923.

From January 26, 1923, and until after January 7, 1925, the petitioner individually was the owner and holder of the remaining 2,001 shares of common stock of the Hotel Co. not assigned to the Investment Co., as aforesaid.

On December 20, 1924, the Hotel Co. declared a dividend of $1.25 per share on its common stock, payable December 31, 1924, to stockholders of record on December 15, 1924.

On December 31, 1924, the Hotel Co. put in the United States mail at Buffalo, New York, where the company had its principal office, a postpaid wrapper addressed to the taxpayer in New York City, containing its check for $2,501.25, payable to the taxpayer, representing such dividend on the 2,001 shares owned by him. The check reached the petitioner in the ordinary course of mail on or after January 2, 1925, but prior to January 7, 1925.

If the attributes of income were to acquire their character solely from the provisions of the agreement of February 3, 1923, it would seem that the dividends paid on February 10, 1923, properly belonged to the Investment Co. and became income to it on that date. The phrase " together with any dividends which may be paid hereafter upon such stock prior to the certificates therefor being transferred upon the books of said company " apparently was intended to cover the transfer of the dividends declared on January 23 and payable on February 10. At first glance, it also would appear that the provisions of section 201 (e) of the Revenue Act of 1921 [1] apply to the situation before us.

However, a careful study of the facts and the law appropriate thereto is convincing that neither section 201 (e) nor the decision of the courts support that conclusion. Section 201 (e) fixes the time of the acquisition of income by the distributee, but does not determine who is the proper distributee on a certain date. Assuming, therefore, that either the petitioner or the Investment Co. is the proper distributee, that section merely directs that the gross income shall include the distribution (of dividend) *as of* the date when it is unqualifiedly made subject to the demands of the distributee. The dividend in the case at bar was not unqualifiedly made subject to the stockholder's demands until February 10 and, therefore, could not be included in his or its income before that date. The question then still remains, How was the " shareholder or member " entitled to receive that distribution?

In order to answer this question correctly and completely we must consider the position of the petitioner and the Investment Co. with relation to the stock and to the prospective dividends thereon at the date of the agreement to sell, February 3, 1923. At that time the petitioner owned the Hotel Co. stock. He also owned the right to

---

[1] SEC. 201 (e). For the purposes of this Act, a taxable distribution made by a corporation to its shareholders or members shall be included in the gross income of the distributees as of the date when the cash or other property is unqualifiedly made subject to their demands.

receive the dividends on that stock on February 10. He had acquired that right consequent upon the declaration of the dividend made by the Hotel Co. on January 23 and by reason of his having been a stockholder of record on January 26. The dividend belonged to the petitioner as owner of the stock at the time of declaration, Fletcher Cyc. Corp., section 3700; *Hopper* v. *Sage*, 112 N. Y. 530; 20 N. E. 350; *Ford* v. *Snook*, 205 App. Div. (N. Y.) 194; 199 N. Y. S. 630; and the corporation was indebted to him in his proportionate share of the dividends declared by it on January 23. He became a creditor of the corporation, which was liable for the payment of that debt on and after February 10. *Chesapeake & Delaware Canal Co.* v. *United States*, 250 U. S. 123.

Therefore, he sold to the Investment Co. his stock and his right to receive the dividend thereon in exchange for certain shares of its capital stock. It must be presumed that those shares represented the value of both the shares of stock and the prospective dividends. The dividends, representing gain flowing to the petitioner through his ownership of the stock, were derived from the earnings of the corporation and as such constituted income.

The Hotel Co. made the dividends payable to the stockholders of record on January 26. On that date the petitioner was such a stockholder and, therefore, he, and he alone, could receive the dividend distribution *whenever* it was payable. It became subject to his demand on February 10. The Investment Co. could not have held the Hotel Co. liable for payment to it, but was compelled to look to the petitioner for a proper division of the dividend check paid pursuant to the action of the Hotel Co. taken on January 23. Such division was necessary by reason of the terms of the contract between the parties, but the tax incidence was not thereby fixed.

The petitioner cites *Eugenia R. Jemison*, 28 B. T. A. 514. The situation there considered involved the liability of the purchaser under a very different set of facts. Moreover, it involved different tax concepts. We find nothing in the cited case at variance with our holding here.

As to the second issue, our decision is controlled by *Avery* v. *Commissioner*, 292 U. S. 210. See also *Edward S. Harkness*, 31 B. T. A. 1100.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

TRAMMELL dissents.