CITY GENERAL INSURANCE COMPANY, Limited on behalf of itself and other underwriters subscribing to policy No. F 39501, dated January 13, 1955, issued in London to Julius Dreyfus, Incorporated, Plaintiff,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant.

United States District Court
S. D. New York.
March 29, 1963.

to the proceeds of an action brought in the name of the insured against a bailee of the insured property. Although the action in form is by one insurance company against the other, the parties agree that the case is to be treated as though the funds had been paid into court, to be paid out to the party ultimately found to be entitled to them. There is no dispute about the facts, which I find to be as follows:

On July 1, 1954, in New York, defendant issued a "Jeweller's Block Policy" to Julius Dreyfus Inc. ("Dreyfus"), a wholesale jeweler whose place of business was located in New York. By this policy defendant insured, "subject to the limitations and conditions hereinafter contained," Dreyfus' jewelry for the period from July 1, 1954 to July 1, 1955, against all risks, with certain exceptions not material here. The face amount of the policy applicable to the type of risk here involved was $50,000. Paragraph 16 of the "Insuring Conditions" read as follows:

> "It is understood and agreed that if in case of loss the Assured shall acquire any right of action against any individual, firm or corporation for loss of or damage to the property insured hereunder, the Assured will, if requested by the Company, assign and transfer such claim to the Company or, at the Company's option, execute and deliver to the Company the customary form of loan receipt, upon receiving payment for loss or advancement of funds in respect of the loss; and will subrogate the Company to, or will hold in trust for the Company, all rights and demands of every kind, respecting the same, to the extent of the amount paid or advanced, and will permit suit to be brought in the Assured's name at the expense of the Company."

On January 13, 1955, in London, plaintiff issued to Dreyfus an "Excess Travellers" policy covering the period from July 1, 1954 to July 1, 1955. As will subsequently appear, the date of issuance of this policy was actually subsequent to

---

Hill, Rivkins, Middleton, Louis & Warburton, New York City, for plaintiff, Joseph T. McGowan, New York City, of counsel.

Bigham, Englar, Jones & Houston, New York City, for defendant, John M. Aherne, New York City, of counsel.

McLEAN, District Judge.

This is a controversy between two insurance companies as to which is entitled

the loss, but no point is made of that fact, and it seems to be assumed by the parties, although no evidence was offered on the subject, that a binder had been arranged between Dreyfus and plaintiff shortly after July 1, 1954 and before the loss occurred. The policy insured Dreyfus against loss of its jewelry while in the hands of its travellers or employees or while deposited in any hotel for safekeeping. The policy provided:

"It is further expressly understood and agreed that this insurance shall only operate in excess of that section of the Jewellers Block Policy issued to the Assured by the St. Paul Fire and Marine Insurance Company (hereinafter called the Primary Insurers) which provides similar coverage to that defined in this Policy and Underwriters hereon shall only be liable to pay the excess of loss over $50,000 ultimate net loss in respect of loss or losses, falling within the definition of loss contained in this Policy, occurring under the Policy of the Primary Insurers and then only up to $50,000.-00 of such excess.

"The term 'ultimate net loss' shall be understood to mean the actual net loss to the Assured after making proper deductions for all recoveries and salvages."

On October 13, 1954, a Dreyfus employee deposited in the safe of the Hotel Hayes in a Michigan city,* a sample case containing jewelry which is stipulated to have been worth $78,250. On the following day, when the employee went to reclaim the jewelry, it could not be found. It has never been recovered. Thereafter, Dreyfus made a claim under both insurance policies.

On November 5, 1954, defendant paid to Dreyfus $50,000 against the execution and delivery by Dreyfus to defendant of a "Loan Receipt" reading as follows:

"BORROWED AND RECEIVED FROM *ST. PAUL FIRE & MA-*

*RINE* INSURANCE COMPANY, ST. PAUL, MINN. THE SUM OF *FIFTY THOUSAND . . . AND . . . NO/100 . . .* DOLLARS, $50,000.00, as a loan, without interest, repayable out of any net recovery the undersigned may make from any vessel, carrier, bailee, or others upon or by reason of any claim for loss of or damage to the property described below, or from any insurance effected by any carrier, bailee or others on said property, and as security for such repayment, we hereby pledge to the said Insurance Company all such claims and any recovery thereon.

"In further consideration of the said loan, we hereby guarantee that we are the persons entitled to enforce the terms of the contract of bailment, or of transportation set forth in any bills of lading covering the said property; and we hereby appoint the officers of the said Insurance Company and their successors, severally, our agents and attorneys in fact, with irrevocable power to collect any such claim and to begin, prosecute, compromise or withdraw, in our name, but at the expense of the said Insurance Company, any and all legal proceedings which they may deem necessary to enforce such claim or claims and to execute in our name any documents which may be necessary to carry into effect the purposes of this agreement."

On January 24, 1955, plaintiff paid to Dreyfus $28,250, *i.e.*, the difference between $50,000 and the value of the jewelry, against the execution and delivery by Dreyfus to plaintiff of a "Loan Agreement," reading as follows:

"In consideration of the payment by the Underwriters at Lloyd's, London, and Companies noted on Policy No. 39501, in the sum of Twenty-eight Thousand Two Hundred Fifty

---

* Whether the Hotel Hayes is located in Detroit, as counsel stipulated, or in Jackson, as one of the exhibits indicates, is immaterial.

Dollars ($28,250.00), which is to be considered as a loan and repayable only to the extent of any net recovery we may make from the Hayes Hotel and/or others, on account of the theft of sample case and contents, which loss occurred on October 13, 1954, WE HEREBY PLEDGE, to the said Underwriters at Lloyd's and Companies, the said recovery, and agree to enter and prosecute suit against the Hayes Hotel and/or others, in our name, but at the expense and under the exclusive direction and control of the said Underwriters at Lloyd's, London and Companies."

On January 25, 1955, Dreyfus executed and delivered to plaintiff a "Trust Agreement" reading as follows:

"WHEREAS the undersigned, as the insured under Policy No. 39501 of the Underwriters at Lloyd's, London and Companies, has presented claim to said insurers under the said policy for loss of property of the undersigned occurring on October 13, 1954, for which loss, others are liable to the undersigned and it is contemplated that recovery from such others be pursued;

"It is understood and agreed that the legal and equitable title to our cause or causes of action against the party or parties responsible for the loss sustained by us, shall remain with us and shall not pass to the aforesaid Underwriters at Lloyd's, London and Companies by reason of their prospective advance to us. We agree to present claim and to bring legal action, in the name of the undersigned against the party or parties responsible or liable for the loss of our property through legal counsel designated by the aforesaid insurers, but it is understood that the compensation for such counsel shall be contingent upon recovery and that we shall be free of expense in connection therewith. We hereby agree to become trustees of an express trust in connection with said causes of action and any recovery thereunder, and pledge that the proceeds that may be recovered by the undersigned, less attorneys' fees and disbursements, will be held in trust by us for the benefit of the aforesaid Underwriters at Lloyd's, London and Companies and will be repaid to the said insurers."

Defendant, by its own counsel and at its expense, and with the knowledge and consent of plaintiff, instituted an action in the name of Dreyfus as plaintiff in the United States District Court for the Eastern District of Michigan, against Hotel Hayes, to recover for the loss. This action was eventually settled by defendant, with the knowledge and approval of plaintiff, for the sum of $36,500. After deducting counsel fees and expenses, the net proceeds of the recovery were $22,717.87. This sum was paid to defendant upon its undertaking to hold it in escrow pending the outcome of this action.

Plaintiff asserts that, as an "excess insurer," it stands in the shoes of Dreyfus, the insured, who is not a party to this action and is apparently out of business. In view of that contention, I shall first consider whether defendant is entitled, as against Dreyfus, to retain the $22,717.87.

The maximum possible liability under defendant's policy was $50,000. The value of the insured property exceeded that sum. Upon the occurrence of a loss, defendant, under Paragraph 16 of its policy, had a choice of two alternatives. Its first alternative was to pay the $50,000 to the insured outright, thereby becoming subrogated to the insured's rights against the bailee, and in so doing, to take an assignment from the insured of its claim against the bailee. Its second alternative was to lend the $50,000 to the insured, in which event the insured, under the policy, undertook to hold its cause of action against the bailee in trust for the defendant "to the extent of the amount advanced." Defendant elected the second alternative. Upon receipt of the $50,000 advance, the insured, by the

terms of the loan receipt, agreed to repay the advance to defendant out of any recovery that the insured might make against the bailee, and as security for this obligation, the insured pledged to defendant its cause of action against the bailee and any recovery thereon.

The policy and the loan receipt are New York contracts, governed by New York law. There is no doubt as to their validity. The New York courts have had occasion to consider, for the purpose of applying the real party in interest statute, a policy provision and a loan receipt very similar to these in Sosnow, Kranz & Simcoe, Inc. v. Storatti Corporation, 269 App.Div. 122, 54 N.Y.S.2d 780 (App.Div. 1st Dept. 1945), *affirmed* 295 N.Y. 675, 65 N.E.2d 326 (1946). The court there held that the loan agreement created a loan, in substance as well as in form, that it was not in substance a payment of the loss, and that it was a valid contract under which the insured retained the legal title to his cause of action against the bailee as trustee of an express trust for the benefit of the insurer. Consequently, the court held, the insured was the real party in interest in its action against the bailee.

To the same effect is the decision of Judge Dawson in Hartford Fire Insurance Co. v. Commercial Union Assurance Co., 131 F.Supp. 751 (S.D.N.Y.1955), in which he applied New York law.

Acting pursuant to its contract with the insured, defendant brought suit against the bailee in the insured's name, compromised that suit, as it had the right to do under the terms of the loan receipt, and effected a net recovery of $22,717.87. If the language of the policy and the loan receipt means what it plainly says, the conclusion is inescapable that defendant, as against the insured, is entitled to retain the proceeds.

Plaintiff attempts to avoid this plain language by pointing to certain cases, none of which is from New York, which have stated, usually by way of dictum, that where an insurer has paid a loss and has become subrogated to the insured's rights against a third person, the proceeds of any recovery must be applied first to make the insured whole before anything can be paid to the insurer. Stated in another way, it comes down to saying that unless the sum paid to the insured by the insurer plus the amount of the recovery from the third person equals the value of the property, the insurer takes nothing. If the total exceeds the value of the property, the insurer takes only the excess. See Federal Ins. Co. v. Engelhorn, 139 N.J.Eq. 250, 50 A.2d 833 (1947); Shawnee Fire Ins. Co. v. Cosgrove, 86 Kan. 374, 121 P. 488 (1912); Pennsylvania Fire Ins. Co. v. Harrison, 94 So.2d 92 (La.App.1957); United Services Automobile Association v. Hills, 172 Neb. 128, 109 N.W.2d 174 (1961).

These cases seem to me to be dealing with the equitable doctrine of subrogation, apart from contract. Their basic premise is that it would be inequitable to permit subrogation until the insured has been made whole.

■ But we are not dealing here with equitable subrogation by operation of law. We are concerned with defendant's right under a specific policy provision and a specific loan receipt contract. Where funds are advanced under a loan receipt, there is no subrogation. Sosnow, Kranz & Simcoe, Inc. v. Storatti Corporation, supra; Hartford Fire Insurance Co. v. Commercial Union Assurance Co., supra.

In my view, therefore, plaintiff's cases are not in point. Whatever the rule may be in the absence of contract, I can see no reason why an insured should not be held to his bargain. If this results in a loss to him when the value of the property exceeds the amount of the insurer's commitment, he has himself to blame. He could have protected himself fully by taking out more insurance or by seeing to it that the property entrusted to his traveling salesman was not worth more than the insurance carried on it.

What was defendant's commitment? To say that it must be $50,000 because the face amount of the policy was $50,000 seems to me to beg the question. The policy must be read as a whole. Defendant's commitment was not one to pay $50,000 without qualification. Its obligation was to pay $50,000 less the proceeds of any recovery from the bailee.

I conclude, therefore, that, as against the insured, defendant is entitled to retain the proceeds. It follows that if plaintiff does indeed stand in the insured's shoes, as it claims, plaintiff cannot recover.

I am unwilling to let the case rest here, however, for I believe that in some respects plaintiff, despite its asserted position, is really arguing that it stands in a better position than the insured. Plaintiff seems to contend that its policy gives it that stronger position. In its policy plaintiff undertook to pay "the excess of loss over $50,000 ultimate net loss." Ultimate net loss is defined as "the actual net loss to the Assured after making proper deductions for all recoveries and salvages." Plaintiff says that since the value of the jewelry was $78,250, and the recovery was $22,717.87, the ultimate net loss is the difference, *i. e.*, $55,532.13, and that since this sum exceeds $50,000 only by $5,532.13, plaintiff is liable to the insured only for that amount.

The conclusion to be drawn from this argument is that plaintiff advanced too large a sum to the insured and hence that, as against the insured, plaintiff is entitled to recover a large part of its advance. It does not follow, however, that plaintiff is entitled to the proceeds which the insured agreed to hold in trust for defendant. Defendant is not bound by the terms of plaintiff's policy, with which it had nothing whatever to do. The terms of that policy cannot impair the force of defendant's contract with its insured.

■ Do plaintiff's loan agreement and trust receipt put it in a better position than the insured? I think not. On November 5, 1954 the insured pledged its cause of action against the bailee to defendant and constituted itself trustee of the proceeds for defendant's benefit. Therefore, the insured had nothing left that it could validly pledge to or hold in trust for plaintiff when it purported to do so in January 1955. Whether these facts give rise to a cause of action in plaintiff's favor against the insured for fraud is, of course, irrelevant to the present issue.

■ Finally, plaintiff contends that it is a custom and practice in the insurance business that in a situation such as this, where a "primary" and an "excess" insurer are involved, the proceeds of any recovery by the insured from a third party belong to the excess insurer. Over defendant's objection, I permitted an insurance adjuster and an insurance agent to testify as experts to this alleged custom. I stated that I would take their testimony for what it might be worth. After consideration, I have concluded that it should be disregarded. In the first place, each witness, in effect, admitted that the question is essentially one of law and that the ultimate answer must depend upon the language of the contracts. More important, whether the witnesses so admitted or not, this would be true as a matter of law. The terms of defendant's policy and loan receipt are unambiguous and hence cannot be varied by parol evidence of custom or usage. Pink v. American Surety Co., 283 N.Y. 290, 28 N.E.2d 842 (1940); Hopper v. Sage, 112 N.Y. 530, 20 N.E. 350 (1889); Transatlantic Shipping Co. v. St. Paul Fire & Marine Ins. Co., 9 F.2d 720, 46 A.L.R. 946 (2d Cir.1925).

I conclude, therefore, that plaintiff is in no better position than the insured, and that defendant is entitled to the proceeds of the recovery.

Pursuant to Rule 52(a), this opinion constitutes the court's findings of fact and conclusions of law.

The Clerk is directed to enter judgment in favor of defendant. So ordered.