---

(64 App. Div. 566.)

### In re BRANDRETH'S ESTATE.

#### Appeal of .KANE et al.

(Supreme Court, Appellate Division,· Second Department.    October 24, 1901.)

1. SETTLEMENT OF DECEDENTS' ESTATES—APPORTIONABLE DIVIDENDS.
    Code Civ. Proc. § 2720, provides that all annuities, dividends, or other
    payments made payable at fixed periods under any instrument shall be
    apportioned so that on the death of any person interested therein. his
    legal representatives or assigns shall be entitled to a proportion thereof.
    A testator transferred corporate stock to his daughters, who thereupon
    executed an instrument stating that the testator was to receive all divi-
    dends on the stock until his death, and have the right to vote thereon.
    The company declared and paid a dividend October 28th, and the testa-
    tor died November 15th.    Another dividend was declared November 27th.
    The dividends were usually paid monthly, but only when they were
    earned, and the corporation had the right to pay them at their pleasure
    or convenience.   Held, that the dividend declared November 27th was
    not apportionable, and the testator's executors were not entitled to any
    portion of it.

2. SAME—SPECIFIC LEGACIES.
    Where a testator bequeathed a share of corporate stock, the legatee
    was entitled to the dividends declared thereon after his death, where the
    dividends were not apportionable.

3. SAME—EXECUTOR'S ACCOUNT.
    Code Civ. Proc. § 2730, provides that on the settlement of the account
    of an executor the surrogate must allow to him reasonable compensation
    for his services and expenses.    Section 2728 requires the executor's ac-
    count to be presented, duly verified, with the petition, for a judicial
    settlement.   Held, that the account need not include any claim that the
    surrogate must ascertain, and an executor may testify to the amount
    and purpose of expenses paid by him in the administration of the estate,
    though the items were not included in the account.

Appeal from surrogate's court, Westchester county.    ·
Appeal by John I. Kane and Francis Larkin, Jr., as executors of
George A. Brandreth, deceased, from a decree of the surrogate's
court settling and adjusting their accounts as executors of the will
of George A. Brandreth, deceased.    Decree set aside.
Argued before  GOODRICH,   P.  J.,  and  WOODWARD,
HIRSCHBERG, JENKS, and SEWELL, JJ.

Adrian H. Joline, for appellants.
Samuel Watson, for respondent.

SEWELL, J.    One of the questions involved is whether the es-
tate of the testator is entitled to an apportionment of a dividend
declared upon 11 shares of stock of the Porous Plaster Company

on the 24th day of November, 1897. On the 2d day of November,. 1893, George A. Brandreth, the testator, transferred to his four daughters 11 shares of stock of the Porous Plaster Company, and they thereupon executed an instrument or power of attorney which recited that the transfer to them was made upon condition that the said George A. Brandreth "is to receive all dividends declared upon said stock for the term of his life, and also upon the condition that he has the right to vote upon the said eleven shares of stock the same as though no transfer had been made," and wherein the Porous Plaster Company was authorized "to pay him all dividends which may be declared upon said stock, to make out the checks to his order, and to take his receipt for the same." The power of attorney also contained the provision: "It being our intent and object to secure him the dividends on said stock until his death, and also the right to vote on said stock." It is conceded that the Porous Plaster Company declared and paid a dividend on the 28th of October, 1897, and that no other dividend was declared or paid prior to the death of the testator, which occurred November 15, 1897. It also appears that another dividend of $200 per share was declared November 27, 1897, and that the dividend upon the 11 shares transferred to the daughters was paid to them. The testimony of Ralph Brandreth, vice president of the Porous Plaster Company, constituted the only evidence in regard to the power or practice of the company as to dividends. He testified:

"We never declared dividends. We pay them when we have them,—once in two months, once in three months. We tried to pay them every month a few years ago. It is a close corporation. We pay dividends when we have them. That has been the general practice for the past two years. The dividends are paid under the direction of the executive committee, whenever we see fit to do it. * * * We pay them now usually on the fourth Wednesday of each month. * * * We pay dividends when we earn them. * * * We can never tell till the money is out. We might have something happen—an accident, or fire, or something of that kind—that would prevent it. * * * We cannot tell in what period of the month it is earned in. The business runs along all the time. It is impossible to tell when it is earned. It is earned all over, and we cannot tell when it is earned."

The surrogate found:

"That the usual monthly dividend at the rate of $200 per share was declared upon the stock of the Porous Plaster Company on October 26, 1897; the next monthly dividend upon the stock of said Porous Plaster Company was at the rate of $200 per share, and was declared upon November 24, 1897."

The surrogate also found:

"That said dividends of October 26, 1897, and November 24, 1897, declared upon the stock of said Porous Plaster Company, were not payable, nor did they become due, at fixed periods, under any instrument executed after June 7, 1875, or under a last will and testament taking effect after said date. They were paid, however, at regular monthly intervals."

The surrogate refused to find as a conclusion of law that the estate of the testator was not entitled to an apportionment of the dividends. declared on the 24th day of November, 1897, upon the 11 shares.

transferred to the four daughters, or upon 1 share of stock bequeathed to Eliza V. Larkin, and held and decided that the executors were chargeable with seventeen-thirtieths of $2,400, the amount of the dividend paid on the 12 shares of stock. It has been repeatedly held that, in the absence of any provisions in a contract of sale and purchase of stock, the law gives the dividends to the owner of the shares when the dividends were actually declared, and not to the owner of the stock before such declaration. In Hopper v. Sage, 112 N. Y. 530, 533, 20 N. E. 350, 351, 8 Am. St. Rep. 771, 772, the court said:

"When a dividend is declared, it belongs to the owner of the stock at that time; but until such declaration the profits form part of the assets, and an assignment by a stockholder before such declaration carries with it his proportional share of the assets, including all undeclared dividends."

In Hyatt v. Allen, 56 N. Y. 553, 558, 15 Am. Rep. 449, 452, the learned judge who spoke for the court said:

"A gift of the profits and dividends of stock for life would not, I think, be held to carry dividends declared after the death of the beneficiary, although made from profits accrued during his life."

This rule was also announced in Hill v. Newichawanick Co., 8 Hun, 459, affirmed in 71 N. Y. 593; Jermain v. Railroad Co., 91 N. Y. 483; In re Kernochan, 104 N. Y. 618, 11 N. E. 149.

The declaration of a dividend is, in legal contemplation, a separation of the amount thereof from the assets of the corporation, which holds such amount thereafter as the trustee of the stockholder at the time of the declaration of the dividend. Hopper v. Sage, supra. The statement of the term or time during which the dividend shall be declared is the essence of the contract. It designates the dividends which the testator was to receive, and not merely the time when he had the right to receive them. The substance and effect of the language employed is that only the dividends actually declared before the death of the father should be paid by the company, and after that event the right to dividends should become absolute and perfect to the stockholders. It was the uniform and unbending rule of the common law, recognized both by courts of law and equity, that annuities were not apportionable in respect of time. Kearney v. Cruikshank, 117 N. Y. 95, 22 N. E. 580. This rule of the common law has been changed from time to time by statutes making annuities apportionable in respect of time. The legislature of this state changed the rule in 1875 (chapter 542, Laws 1875), but only as to annuities, dividends, and other payments made payable or becoming due at fixed periods under an instrument executed after the passage of that act. This statute was superseded by section 2720 of the Code of Civil Procedure, which, by its terms, is likewise confined in its operation to certain sums made payable or becoming due at fixed periods under an instrument since the passage of the act of 1875. No word or phrase is contained in any instrument which can be regarded as fixing either the measure or time of payment of the dividends. The Porous Plaster Company was under

no obligation to pay dividends at any fixed date. It is undisputed that the dividends were paid when they were earned, and that the executive committee had the power to increase or diminish them, and to pay them at their pleasure or convenience. The fact that dividends might, in the ordinary course, be paid monthly, or that they were paid for a time at regular monthly intervals, did not fix the time of payment within the meaning of this section of the Code. It therefore follows that the executors had no legal claim to any part of the dividend declared November 24, 1897, that it was not apportionable, and that the surrogate erred in charging them with any part of it.

The same principle prevails in regard to the dividend upon the share bequeathed to Mrs. Larkin. This share being a specific legacy, it vested as of the time of the death of the testator, and she was from that time entitled to any dividends declared thereon.

The surrogate also erred in refusing to permit one of the executors to testify to the amount and purpose of expenses actually paid by him. Section 2730 of the Code of Civil Procedure provides that on the settlement of the account of an executor the surrogate must allow to him for his services, over and above his or their expenses, commissions as therein stated upon all sums of money received and paid out, and that "in all cases such allowance must be made for their necessary expenses actually paid by them as appears just and reasonable." It appears from the language of this section that it is for the surrogate to determine as to the reasonableness and necessity of the claim of the executor after an examination into the facts and circumstances of the charge. The Code does not, in terms or by implication, provide, and there is no formal rule of the court which requires, the items of the expenses to be included in the account. It would seem from this circumstance that an executor should not be deprived of the necessary expenses actually paid by him for the benefit of the estate merely because the account does not contain them. "An executor cannot be required to be wiser than what is written." However this may be, it is certain that the legislature did not intend that the account which section 2728 requires to be presented, duly verified, with the petition, for a judicial settlement, should include any claim that the surrogate must ascertain and adjust in the settlement, and be allowed by the decree.

It follows that so much of the decree or order as is appealed from must be set aside, and the proceedings remitted to the surrogate for further proceedings in accordance with this opinion, with costs to abide the final award of costs by the surrogate. All concur.