## In the Matter of the Estate of JACOB AMAN, Deceased.

Surrogate's Court, Monroe County, July 15, 1938.

*G. R. Van Alstyne,* for the executors.

*P. G. Smith,* for the legatee.

*R. W. Lochner,* special guardian.

FEELY, S. Testator, by his last will dated December 12, 1932, divided the residue of his estate into seventeen equal parts, four of which he placed in trust in the hands of a nephew for the benefit of the latter's father. The will directs that a certain mortgage for $10,000, which he held against Cletus Aman, another son of the beneficiary of the trust, should be regarded as part of the trust fund; and directions are added as to what should be done if the mortgage were more, or were less, than the four-seventeenths share. When testator died on March 11, 1937, there was interest due him on this mortgage from January 1, 1933, which he had been accepting at the rate of five per cent, although the mortgage was written for six. At the less rate there was due him at death $2,097.21; and no interest has been paid the estate since his death. There is a first mortgage for $8,000 on the same property, held by a savings bank. The executors claim that the will requires the $10,000 mortgage be treated as a specific legacy, which carries with it not only the interest from and after the testator's death, but also the arrears due before he had died; and they have accordingly treated those arrears, in the sum of $2,097.21, as going to form part of the trust fund, together with the $10,000 principal of this mortgage. This addition is resisted by the special guardian for a residuary legatee of the trust fund. The account indicates that the four-seventeenths share going to this trust will exceed by some two or three thousand dollars the total of $12,097.21.

Assuming the direction to the trustee to accept this $10,000 mortgage as a " part of the trust fund "— which as a whole was to be composed of four-seventeenths of testator's net estate, without regard to this mortgage being more, or less than $10,000, or possibly even non-existent — requires the trust legacy to be considered as one of a specific subject, rather than one of a sum certain in money so secured (See *Matter of Solomon,* 165 App. Div. 276), or thus made conveniently payable, then the difficulty arises not so much out of the general principles applicable to legacies of specific things without any implied equivalent, as it does out of the peculiarity both of the various subject matters to which those principles are applied, and also out of the variety found in the patterns of division.

There is no doubt in principle that a legacy of a specific productive thing carries with it, after its kind, its " accessories " (*Matter of Strasenburgh*, 136 Misc. 91), its " appendants " (*Matter of Althaus*, 94 id. 43) and " all accretions and increment thereon " (*Matter of Michaelis*, 110 id. 185, 189; *Matter of Gans*, 60 id. 282, 286); which are also called its " produce " (*Platt* v. *Moore*, 1 Dem. 191), or its " increase " (*Murphy* v. *Marcellus*, Id. 288); but if inanimate and unproductive articles of property are specifically bequeathed, and not delivered, it does not follow that the legatee is entitled to interest upon their value out of the estate by way of recompense for detention — if withheld, the remedy is against the executor personally, (*Isenhart* v. *Brown*, 2 Edw. Ch. 341, 347). In the class of primitive cases, *e. g.*, the mare in foal, the unshorn sheep, or the growing crop (*Stall* v. *Wilbur*, 77 N. Y. 158; *Matter of Chamberlain*, 140 id. 390), the line of demarcation is suggested by a likening of interest in default to " a fruit fallen from the tree in the life of the testator " (*Matter of Althaus*, 94 Misc. 43, 48), but in the more complicated cases arising out of social obligations and the symbols in which they are embodied, it is not so easy to trace the causality that brings forth the " produce," the " increase " and " increment," or that draws unto itself the " accessory," the " accretion " and the " appendant." A corporation, for instance, does not produce dividends of any sort with any natural or normal constancy. Dividends come if and when they are earned or declared; but interest on money or securities is continuous or constant, rather than contingent.

In point of time no doubt exists that in all productive sorts of specific subject-matters those increments or accessions that accrued after the death of testator follow their principal, as a natural or conventional part thereof, into the hands of the specific legatee. In regard to those that accrued before testator's death, the cases are not in accord as to legacies of specific corporate stock. (See 89 A. L. R. 1125.) It has been held that such a legacy did not carry with it the ordinary dividends declared before the death of testator (*Matter of Leavitt*, 86 Misc. 609); but the contrary was held in *Matter of Adams* (90 id. 254); and it has been held that a dividend earned on such stock in testator's lifetime, but not declared until after his death, was to be apportioned. (*Matter of Hastings*, 6 Dem. 307, and see *Matter of Brandreth*, 64 App. Div. 566.)

However, those and like rulings do not apply in any way to such specifically given subjects as bonds, notes or mortgages that naturally or usually bear interest continuously; and in this respect differ essentially from all kinds of corporate dividends. Underhill in his Law of Wills (p. 560) states generally that " a legacy of a

bond or of a note carries with it, in the absence of statute requiring apportionment, all the interest which has accrued to the death of the testator."

So, a legacy of a specific bond was held to carry with it the right to the interest represented by a coupon that was found still attached to the bond at the death of testator, and this was put on the principle that such a legacy " carried the bond in such form as the testator had left it " (*Ogden* v. *Pattee*, 149 Mass. 82; 21 N. E. 227); and a like ruling was made in *Matter of Boyer* (N. Y. L. J. June 12, 1915, p. 1079).

So, a legacy of " my life insurance " of $10,000 in a specified company, " carried with the gift all of its accretions." (*Matter of Gans*, 60 Misc. 282, 286.) The executors rely greatly upon the ruling that where testatrix had bequeathed " the mortgage now held by me " on a specified parcel of land, " on which there is now unpaid the sum of * * * $45,000," and then died in the midst of an interest period, that the mortgage so bequeathed carried with it, as " appendant to it," the unpaid interest that had accrued before the death of the testatrix, as well as that which accrued thereafter. (*Matter of Althaus*, 94 Misc. 43.)

Owing to the fact that a legacy of an interest-bearing debt most always describes the debt specifically as the property of testator, it is generally found that a legacy of a mortgaged debt, carries with it all interest accrued and unpaid at the death of the testator. In many of these cases the factor of testator's particular intention is stressed. In *Matter of Clark* (16 Misc. 405) there was a bequest of " All the mortgages (including notes and other obligations therein described and for which the mortgages are security)." The question arose whether the interest accrued thereon up to the time of decedent's death belonged to the legatees, or to the estate. The surrogate declined to accept the theory of counsel that the solution depended on whether or not the bequest of these mortgages was a general, specific or demonstrative legacy. He placed his decision rather on the ground that testator by the language above quoted plainly intended to bequeath the accrued interest together with the notes and mortgages. So, in *Matter of Grinnell* (115 Misc. 722) a codicil read: " it is my intention that all cash and securities on deposit," in a specified trust company, " shall be divided equally among my children." This legacy was held to carry to the children " the accrued income thereon," not only because the legacy was a specific one, but also because testatrix intended an equal division of both income and principal.

It is necessary, therefore, to inquire what this testator, in fact, meant by the peculiar language of his last will now in discussion, in

the light of those general observations. In brief, he directed a division of his residuary estate into seventeenths; and four thereof, by subdivision (d) of paragraph " Fifth," were given to a nephew, Joseph, in trust, for testator's brother John, " subject, however, to the following provisions: It is my will and direction that said executors shall turn over to said trustee as part of said trust fund the ten thousand dollars ($10,000) mortgage which I have on the farm owned by Cletus Aman, the same to be part of the trust fund, and in addition any portion of John Aman's share which said executors have in their hands should the share exceed ten thousand dollars ($10,000)." The will further provided that if John's share should be less than $10,000, the executors were to " call payment " on the mortgage to the extent that the outstanding balance should equal John's share; and if Cletus were the owner of the farm at such call, and if the amount to be paid on the mortgage to balance the share of John should exceed $1,000, then Cletus was to have two years in which to pay it in equal installments; and the balance due on the mortgage should be extended during the life of John, provided the interest, taxes, assessments and insurance were paid on the mortgage according to its terms. The sixth paragraph directs that from the balance of the trust fund the use and income are to be applied to the support of John, and to pay for his funeral.

It will be noted that " interest " is mentioned only once, to wit, in the proviso as to extension of principal; and there it means the regular interest accruing during the life use and after the death of testator. As to the arrears before testator's death, now in question, the will is naturally silent. Testator could not have foreseen how much, if any such, there would be at his death. He assumed the interest would continue to be currently paid to himself, even though the mortgage was a second one. The first default occurred about six months after the date of the will. It is immaterial that this mortgage has since become worthless, and the arrears uncollectible. On the other hand, it can be argued that this legacy, on its face, deals with a debt; aside from the fact that originally testator loaned money to his brother John, and later took this mortgage in lieu thereof. Also that this trust legacy was not a gratuity; rather it appears to be like the adjustment of an advancement, although not exactly so, as testator handled it in the will; and that this debt feature goes to support the inference that if the provisions for John were held not to be tantamount to a specific legacy, still the result would be the same, for in such an adjustment or testamentary offset the testator must have meant that all interest should be taken into account. However, testator's intention is to be determined mainly from the language used in the will. This particular will is not only silent as to the arrears of interest, and naturally so, but it manifests

in several respects the testator's understanding that only $10,000 of the principal of the mortgage was to become part of the trust fund. If the share were more than $10,000, the executors were to " call payment " of part of the principal; and if the call were for more than $1,000, the mortgagor Cletus was to have two years in which to pay those instalments of principal. There was also to be a lifetime extension of time of payment of the principal; provided interest was paid on the mortgage according to its terms. All these are features characteristic of dealing with a fixed amount of principal of mortgage to go to make up the trust fund of possibly a greater amount, or a less amount, than four-seventeenths of the residuary estate. In setting up the trust under those directions, unless the arrears of interest were paid up, no extension of the term of the mortgage could be had; but the trust would not be frustrated by a default in paying up those arrears, especially if the share were more than the specified $10,000.

My conclusion, therefore, is that the arrears of interest due on this mortgage before testator's death fall to the residuary estate and cannot be added to the $10,000 in making up the trust, with the share of cash going to it, aside from the arrears as part of the residue.

Let the decree of judicial settlement to be entered herein be framed in accord with this decision, and be presented by counsel in form for insertion of allowances to be made at that time; and the matter be brought on on two days' notice; and that thereupon the decree be entered.